# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

---

**JOSEPH SARTIN, KENNETH RICHE,**
**TONY EDWARDS, ROBERT SILBERMAN,**
**and SCOTT WILLOCK, Individually and**
**on Behalf of All Others Similarly Situated,**

**Plaintiffs,**

**v.**                                          Case No. _____

**CHULA VISTA, INC., CVR MANAGEMENT,**
**LLC, MICHAEL KAMINSKI, MICHAEL**
**BEST & FRIEDRICH, LLP, and NANCY**
**HAGGERTY, ESQ.,**

**Defendants.**

---

## CLASS ACTION COMPLAINT

---

Plaintiffs Tony Edwards, Kenneth Riche, Joseph Sartin, Robert Silberman, and Scott Willock, individually and on behalf of all others similarly situated ("Plaintiffs"), through their counsel, and for their Complaint at Law against Defendants Chula Vista, Inc., CVR Management, LLC, Michael Kaminski (collectively referred to at times as the "Chula Vista Defendants"), Michael Best & Friedrich, LLP, and Nancy Haggerty, Esq., state as follows:

### INTRODUCTION

1.    Defendants are engaged in a scheme to take financial advantage of condominium unit owners at the Chula Vista Resort & Waterpark ("Chula Vista"). Defendants' scheme includes, but is not limited to: (i) the unlawful conversion of

Case 2:18-cv-01890   Filed 11/30/18   Page 1 of 106   Document 1

Plaintiffs' property without paying Plaintiffs due consideration; (ii) requiring Plaintiffs to pay inflated condominium assessments, which are used for Defendants' exclusive benefit; and (iii) fraudulently overcharging Plaintiffs for maintenance, repair, and miscellaneous improvements. Plaintiffs, and the Class they seek to represent, are owners of condominium units at Chula Vista. Plaintiffs purchased their condominium units for two primary purposes: (i) as income-generating rental properties; and (ii) for their own vacation use.

2. The Chula Vista Defendants operate the Chula Vista resort and oversee rental of the condominium units. Rather than operate the resort in Plaintiffs' best interests, as they are legally obligated to do, the Chula Vista Defendants use Plaintiffs' condominium units for their own personal and pecuniary gain.

3. Most insidiously, the Chula Vista Defendants sell "Club" memberships to the general public, which allow Club members to receive massive rental discounts on Plaintiffs' condominium units. While the Chula Vista Defendants collect millions of dollars in Club membership fees and dues by selling discounted access to Plaintiffs' condominium units, they do not give Plaintiffs any portion of the Club membership fees and dues.

4. Plaintiffs never authorized the Chula Vista Defendants to sell discounted access to their condominium units through The Club program, nor did Plaintiffs authorize the Chula Vista Defendants to keep all proceeds therefrom.

5. Additionally, the Chula Vista Defendants force Plaintiffs to pay inflated assessments on their condominium units, for which Plaintiffs receive minimal, if any,

benefit. Instead, the Chula Vista Defendants use the money from these inflated assessments for their own financial gain.

6.     The Chula Vista Defendants also profit off of Plaintiffs by fraudulently overcharging them for routine maintenance, repair, and miscellaneous improvements in their condominium units.

7.     Rather than enjoy the expected rental income on their condominium units, Plaintiffs have lost substantial amounts of money as a direct result of Defendants' unlawful activity.

8.     Plaintiffs, individually, and on behalf of the Class they seek to represent, seek to hold Defendants liable for their operation of and participation in this unlawful scheme.

## PARTIES

### Plaintiffs:

9.     Plaintiff Tony Edwards is a citizen of Wisconsin, who resides in Mukwonago, Wisconsin. During the class period, Mr. Edwards owned multiple condominium units in Chula Vista.

10.     Plaintiff Kenneth Riche is a citizen of Wisconsin, who resides in Waukesha, Wisconsin. During the class period, Mr. Riche owned a condominium unit in Chula Vista.

11.     Plaintiff Joseph Sartin is a citizen of Illinois, who resides in Libertyville, Illinois. During the class period, Mr. Sartin owned a condominium unit in Chula Vista.

12. Plaintiff Robert Silberman is a citizen of Wisconsin, who resides in Milwaukee, Wisconsin. During the class period, Mr. Silberman owned a condominium unit in Chula Vista.

13. Plaintiff Scott Willock is a citizen of Illinois, who resides in Hawthorn Woods, Illinois. During the class period, Mr. Willock owned a condominium unit in Chula Vista.

**Defendants:**

14. Defendant Chula Vista, Inc. was and is a Wisconsin corporation, with its principal place of business located at 2501 River Road, Wisconsin Dells, Wisconsin, 53965. Chula Vista, Inc. operates the Chula Vista Resort & Waterpark.

15. Defendant Michael Kaminski was and is a Wisconsin resident. He is the Chief Operating Officer and owner of Chula Vista, as well as the chief executive of Chula Vista, Inc. and CVR Management. In addition, Michael Kaminski owns and/or operates multiple other businesses and business interests in and around Chula Vista, including but not limited to, a golf course, indoor and outdoor waterparks, restaurants including "Kaminski's Trademark Chop House" and the "Kilbourn City Grill," a spa called the "Spa del Sol," sports facilities, roller coasters, and other various attractions and recreational enterprises.

16. Defendant CVR Management, LLC was and is a Wisconsin limited liability company, with its principal place of business located at 2501 River Road, Wisconsin Dells, Wisconsin, 53965. CVR Management, LLC oversees the rental and day-to-day operations of the condominium units at Chula Vista Resort & Waterpark.

4

17.     Defendant Michael Best & Friedrich, LLP was and is a Wisconsin limited liability partnership, with its principal place of business located at 100 E. Wisconsin Avenue, Suite 3300, Milwaukee, WI 53202.

18.     Defendant Nancy Haggerty was and is a Wisconsin resident who is employed as an attorney and partner of Michael Best & Friedrich, LLP and conducts business in the State of Wisconsin and this District.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs. Additionally, members of the proposed Class are citizens of states different than Defendants. Additionally, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts, and omissions giving rise to the claims herein occurred in this District. Defendants advertised the condominium units, which are the subject matter of this lawsuit, directly to citizens of this District. Members of the Class are citizens of this District. Additionally, Defendant Michael Best & Friedrich, LLP maintains an office in this District, in which Defendant Nancy Haggerty works.

## FACTUAL BACKGROUND

**A.      The History of Chula Vista**

21.      Chula Vista is a southwestern-themed waterpark resort in Wisconsin Dells, Wisconsin.  Originally, the Berry Family purchased a home on the Wisconsin River and built Berry's Coldwater Canyon Hotel and Berry's Dells Golf Course.  In 1952, Joe and Vera Kaminski were innkeepers at the hotel and later purchased the entire complex from the Berry Family.

22.      Over the years, Chula Vista has been owned and operated by various descendants and relatives of Joe and Vera Kaminski.

**B.      Michael Kaminski Takes Over**

23.       Today, Chula Vista is run by Michael Kaminski, the grandson of Joe and Vera Kaminski. Michael Kaminski gained exclusive and unimpeded control of the resort through a series of buyouts, acquisitions, and takeovers. He currently retains full operational control over the resort, the condominium rental program, and assorted businesses and business interests in and around the resort.

24.      Michael Kaminski and assorted family members also own numerous condominium units in Chula Vista.

25.      Throughout the years, Chula Vista has undergone substantial improvements, including a new hotel building and new outdoor pool area.  By the end of the 1990s, Chula Vista had added an approximately 150,000-square-foot outdoor waterpark and a 30,000-square-foot indoor waterpark.

26.     Chula Vista's aggressive expansion continued into this millennium.  In 2006, it completed a $200-million expansion of the entire resort, including a new 80,000-square-foot multilevel indoor waterpark, a redesigned 18-hole Coldwater Canyon Golf Course, a condominium wing added to the existing resort, golf villas along the fairways, an outdoor wave pool along the Wisconsin River, a river walk spanning the entire property, sand volleyball courts, a kiddie lazy river, and 26,000 square feet of convention space.  The expansion created a total of 620 rooms for overnight guests, and is said to have converted Chula Vista into one of the premier resorts in the Dells.

27.     During this time, Michael Kaminski established and/or gained full control of numerous business enterprises within the resort area, including a new steakhouse called "Kaminski's Trademark Chop House," the aforementioned golf courses and associated villas, and the waterparks.





### C. Plaintiffs and the Condominium Units

28. In connection with the expansion, in or about 2005, Chula Vista and Kaminski began a campaign to solicit individual investors, like Plaintiffs, to purchase yet-to-be-built condominium units.

29. As an incentive to invest in the condominiums, Chula Vista marketed to prospective owners, including the Plaintiffs, the opportunity to earn income by renting their condominium units to the general public on a transient basis.

30. Chula Vista presented Plaintiffs with rental forecasts of anticipated future rental revenues for the condominiums, recognizing that the ultimate sales price of a condominium was tied to the rental revenue stream the condominium would generate to an individual investor.

31. To manage the day-to-day operations and rent out the condominium units, Chula Vista organized Defendant CVR Management, LLC, ("CVR").

32. Under the terms proposed to prospective investors, the income derived from the rental of an owner's property would be split 60% to the condominium owner and 40% to CVR.

33.     Plaintiffs were enthusiastic about the representations made by Chula Vista and Kaminski, specifically the rental forecasts that demonstrated positive cash flow on their investment, and the terms of the revenue sharing agreement. Based upon their belief and expectation that Chula Vista and its management would manage the condominium in a reputable and profitable manner, Plaintiffs executed purchase agreements for condominiums.

34.     As condominium unit owners, Plaintiffs became members of the Chula Vista Condominium Unit Owners Association (the "Association"). The Association is an "association of unit owners" under Wis. Stat. 703.15.

35.     After closing on their condominium purchases, Plaintiffs used and enjoyed their condominiums for their intended purpose: receipt of rental income, the generation of capital/investment appreciation associated with owning a condominium at a premier resort in the Wisconsin Dells, and personal vacations.

**D.     The Rental Management Agreement**

36.     In connection with their condominium purchase, all Plaintiffs were encouraged to, and did, enter into a Rental Management Agreement ("RMA") with CVR and the Association, which set out the revenue sharing proposal previously touted by Chula Vista. (An exemplar RMA is attached hereto as Exhibit A).

37.     Under the terms of the RMA, Plaintiffs granted to CVR the right to rent their unit in accordance with the terms of the RMA.

9

38.    The RMA provides that "Net Rental Income" from the rental of the unit is to be split 60% to condominium unit owners, including Plaintiffs, and 40% to CVR. (*See* Ex. A, ¶ 4(b)).

39.    So that the benefits of the RMA are spread nearly equally amongst each condominium unit owners, CVR promised to use "a fair and reasonable rotating system for rental of those condominium units with the goal of maximizing revenue per condominium unit as early as reasonably practicable and to effectively market the rental of the Unit." (*Id.* at ¶ 4(e)).

40.    The RMA did not authorize CVR to rent Plaintiffs' units or otherwise allow Defendants to collect revenue for the use or availability of Plaintiffs' units outside of the RMA.

41.    Chula Vista, Inc., Michael Kaminski, Michael Best & Friedrich, and Nancy Haggerty are not parties to the RMA.

**E.    Defendants' Wrongful Conduct**

**(1)    The Club at Chula Vista – A Tool for Theft and Conversion**

42.    In and around 2009, Chula Vista and Michael Kaminski formed a new program called The Club at Chula Vista Resort ("The Club") and sold memberships to the general public.

43.    The Club charged members a hefty up-front initiation fee of approximately $10,000.00, in addition to annual dues.

44.    In exchange, the Club provided members steep rental discounts on condominiums owned by others, such as the Plaintiffs.  In particular, Club members

10

received discounts on condominium rental of as much as 80%. In contrast to the massive condominium rental discounts, Club discounts on food, beverage, spa services, golf, and resort merchandise was capped at 20%. Therefore, the discount on condominium rentals was the principal benefit of Club membership.

45.     All Club membership fees and dues were kept by the Chula Vista Defendants and The Club; they have never been distributed to condominium unit owners, including Plaintiffs.

46.     The Club was the brainchild of Kaminski, who was looking for ways to lure new visitors to his various business interests within Chula Vista, including his namesake steak house, the waterparks, and the golf courses.

47.     Plaintiffs' condominium units are used as a vehicle to get people into the resort, where they spend money at other Kaminski-operated and owned businesses. Kaminski therefore receives a direct financial benefit in discounting the rental rates of Plaintiffs' condominium units.

48.     In contrast, Plaintiffs receive no benefit from The Club operation. In fact, Plaintiffs are damaged through The Club because their rooms are rented at substantial discounts and, unlike Kaminski, they receive no concomitant benefit.

49.     Through this scheme, profits at entities owned or controlled by Michael Kaminski are maximized and enhanced, while Plaintiffs' revenue from room rentals of their condominium units is reduced substantially.

50.     Condominium unit owners, including Plaintiffs, were not consulted about the formation or operation of The Club.

51.     Additionally, the RMA does not reference or incorporate The Club in any way. There is no provision in the RMA that allows Chula Vista or CVR to convert Plaintiffs' condominium units for the benefit of The Club. Put another way, The Club exists completely independently of the RMA.

52.     The Chula Vista Defendants never sought the private condominium unit owners' consent to allow The Club to make money off of the use of their property.

53.     Chula Vista charged members of the general public approximately $10,000.00 in fees to join the Club.  As such, from 2009 to the present, Chula Vista recognized a substantial amount of revenue in Club memberships and dues - in excess of $10 million.

54.     Despite using Plaintiffs' condominium units to recognize major financial gains from the Club program, the Chula Vista Defendants have failed to share with Plaintiffs any of the revenue generated from fees for Club memberships or offer anything else of monetary value to compensate Plaintiffs for the conversion of rental income.

55.     Because the Club gives its members priority booking, the Club's impact on unit owners such as Plaintiffs is particularly pernicious. The demand for Plaintiffs' condominium units is seasonal, therefore net rental income at Chula Vista is traditionally higher during typical vacation periods: the summer months, particularly in the months of July and August; holiday seasons such as Thanksgiving; Christmas Break, from mid-December through early January; and March-April when local school districts and colleges are on Spring Break.

56. The Club advertises "12 month Advance Priority Reservation - members have the first opportunity at booking reservations for high demand travel times, before it is offered to the general public." Such advance reservations displace full paying public customers from renting units at peak season and other times during the year. Therefore, the Club not only siphons away rental dollars to the detriment of Plaintiffs, it gives priority to Club members over the general public, further damaging condominium unit owners.

57. As the operator of Plaintiffs' property, CVR authorizes Club members and their guests to stay at Plaintiffs' condominiums for substantially reduced prices, without Plaintiffs' consent.

58. Furthermore, Defendants have actively concealed, and continue to actively conceal just how much revenue they are deriving to the detriment of Plaintiffs and the Class.

59. Each condominium unit owner receives monthly financial statements from CVR, which show the dates and rates for unit rentals. What the statements do not show is when and whether—and at what rate—a unit was rented to a Club member. For example:

| Rental Activity from 12/31/2015 to 1/31/2016 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Res Num | Type | Unit # | Arrival | Nts | Gross Amount | Agent Comm | Net Revenue | Mgmt Split | Net to Owner |

60. Defendants' concealment of Club activity and revenue is intentional and undertaken in an effort to hide the full extent of its wrongdoing from Plaintiffs and the Class.

61.     The Club at Chula Vista, and Defendants' use of it to wrongfully reap profits and revenue that should be going to condominium unit owners, has caused and continues to cause, Plaintiffs and the Class to sustain significant financial damage.

62.     Moreover, membership in the Club lasts for years, meaning the associated rental discounts have had, and will continue to have a legacy impact on Plaintiffs and other Condominium owners for an extended period. The negative impact on Plaintiffs continues as of the date of filing of this Complaint.

63.     Defendants' scheme, which has siphoned substantial revenue from Plaintiffs and the Class, has not only devalued their property, but in many instances caused foreclosures.

64.     Revenues and property values for the condominium units owned by Plaintiffs and the Class have not only dropped generally, they have lagged considerably compared to other comparable properties and condominium units in the Wisconsin Dells.

**(2)     Assessments to Fund Other Kaminski Businesses**

65.     Over the years, the Chula Vista Defendants have steadily and substantially increased various amenity fees and assessments, which in no way benefit Plaintiffs and the Class. For example, in 2017-2018, the Chula Vista Defendants increased the total "Indoor Water Park Amenity Fee" by $60,000.00 to $320,000.00 per year (a 31% hike over the previous year).

66. Over time, the assessments have continued to rise, even after portions of the sports complex and recreation areas were sold off and there was theoretically less property to which to apply the assessment dollars.

67. Further, the Indoor Water Park is not a common area, and the Association, Plaintiffs, and the Class receive no product or service whatsoever in exchange for the fees.

68. Condominium unit owners have no ownership interest in the Indoor Water Park, and they do not enjoy any greater access to it than the general public.

69. Rather than benefit Plaintiffs and the Class, the Indoor Water Park assessments fund business enterprises that have nothing to do with Plaintiffs—and everything to do with Michael Kaminski.

70. Simply put, the assessment dollars flowed away from Plaintiffs and directly to the Chula Vista Defendants, and specifically helped fund and profit other Kaminski-owned enterprises, including the Indoor Water Park, the golf courses, the Kaminski Chop House, and others.

71. During a portion of the relevant time period, Ms. Haggerty was counsel to both the Association and the Chula Vista defendants, and helped push through approval of the improper assessment fees.

72. The assessments were not true assessments that benefitted any common area or Plaintiffs' property; they were merely another example of the Chula Vista Defendants using the condominium owners to fund his other enterprises through the siphoning of money from the condominium unit owners with nothing in return.

73.    As of the filing of this Complaint, the condominium unit owners, including Plaintiffs, have paid over $3.1 Million in assessments, from which they have derived no benefit and received no service or product.

**(3)    The Maintenance Program – A Chula Vista Profit Generator**

74.    In addition to the rental management program, CVR Management, in conjunction with Chula Vista, Inc. and Michael Kaminski, oversees and operates the maintenance program at Chula Vista.

75.    As part of the maintenance program, these Defendants replace fixtures, furniture, and the like and perform service and maintenance in the condominium units. Whenever an item in a condominium unit is replaced, the owner is charged and provided a receipt from "Maint. Billings – Chula Vista Resort."

76.    The maintenance receipts include a sales tax charge. This is a clear indicator that CVR is using condominium capital improvement reserve money to purchase replacement items directly from the resort's maintenance department.

77.    Whenever these purchases are made, there is a clear markup on the items. For example, in one specific instance, CVR charged condominium unit owners $400 each for new LG televisions for each unit. At the same time, online retailers, including Amazon, Walmart, and H.H. Gregg were offering the same or similar LG televisions for approximately $232. Clearly, instead of passing this savings on to the condominium unit owners, the Chula Vista Defendants charged thousands of dollars to hundreds of owners for marked up items and kept the ill-gotten profits.

78.    On information and belief, CVR employs a similar markup scheme whenever fixtures or furniture are replaced in the condominium units, or even minor services are provided by the maintenance department.

79.    Profits from the maintenance program, and Defendants' wrongful conduct in implementing the maintenance program, flow directly to Chula Vista, Inc. CVR Management, LLC, and Michael Kaminski.

80.    In an apparent admission that they have been profiting from the maintenance program, as of the filing of this Complaint, Defendants are proposing a "cost only" maintenance program.

81.    Notwithstanding any future changes, Defendants have used the maintenance program to further profit off of Plaintiffs' condominium units for years and Plaintiffs have suffered extensive damages as a result.

### F.    A New Proposed New Rental Management Agreement to Cover Up for Past Wrongdoing

82.    In a further and ongoing effort to misrepresent The Club's true purpose and conceal their wrongfully obtained profits, CVR and Michael Kaminski—as of the filing of this Complaint—are engaged in an attempt to force condominium unit owners, including Plaintiffs, to execute an updated RMA which became effective on November 16, 2018 (the "2018 RMA"). *See* Exhibit B attached.

83.    The 2018 RMA is designed to cover up Defendants' prior misconduct and to further enable such misconduct to continue into the future.

84. Among other things, the 2018 RMA attempts to force Plaintiffs and the Class to sign many important rights away, including rights crucial and dispositive to this action.

85. At its core, the 2018 RMA is an attempt to force the condominium unit owners, including Plaintiffs, to release any and all past, current, or future claims, with no consideration in return.

86. In a cynical attempt to cover up their wrongdoing, Kaminski and CVR are attempting to force condominium unit owners, including Plaintiffs, to acknowledge that The Club is a "private loyalty club" which is similar to "branded hotel loyalty club"; that the Club membership fees are "commissions and discounts" rather than Net Room Revenue; and that they are not entitled to any Club revenue as condominium unit owners.

87. Most cynically, Kaminski and CVR are trying to force Plaintiffs to sign off on the fact that they have always been fully aware of The Club, its purpose and operation and that they consented to Club rentals of their units at severely discounted rates, and acknowledge that they have

> always been "aware of, and consented to, the rental of
> [your] Unit through the Club program, at Club rates, since
> the creation of the Club, and that any charges paid by Club
> members to join the Club were in the nature of
> commissions, and not included in Net Room Revenue."

(Exhibit B at ¶ 4(r)).

88. In essence, Defendants are asking Plaintiffs to sign off on a lie. Club business was always kept a secret from the members of the Class, and they decidedly

did not consent to rental of their units through the Club. Acknowledging as much now would not only be re-writing history to protect Defendants' unlawful acts, it would be signing their names to a dishonest statement. Plaintiffs cannot and should not be forced into that position.

89. Furthermore, the new RMA seeks to have the condominium unit owners

> "acknowledge[] that this statement is intended to clarify the intent of prior Rental Management Agreements, as it relates to the Club program, to classify these membership fees as commissions and discounts for other Hotels, Resorts, Resort facilities, and not Net Room Revenue."

(*Id.*)

90. These statements are demonstrably false. The condominium unit owners have historically intentionally been kept in the dark regarding The Club and kept unaware of The Club's operation and revenue.

91. Other provisions of the new RMA, including Section 4(b), Section 4(e), and Section 4(j), give CVR Management complete discretion to rent condominium units and conjure up a similar Club structure or program, all while refusing to disclose what that structure or program is, where guests are coming from, and how CVR Management and others benefit. *See id.* at ¶¶ 4(b), (e), and (j). This exhibits a troubling lack of transparency and communication over the use of Plaintiffs' property.

92. There are also several specific provisions of the 2018 RMA that address the Waterpark Amenity Fee.

93. Condominium Unit owners hold no ownership interest in the Waterpark and have no real access to the Waterpark that is any different than the general public.

19

Nevertheless, through the Association, of which Plaintiffs are members, the owners have, for years, been paying increasing amounts for what are called "Waterpark Amenity Fees." In other words, the owners have basically been underwriting, through significant payments, the cost of running the Waterpark.

94. Section 5(a) of the 2018 RMA now attempts to condone this improper practice in that it allows CVR Management to deduct Waterpark Amenity Fees from Net Rental Income. Section 12(a) of the 2018 RMA also now refers to the current Waterpark Amenity Fee as a "Waterpark Marketing fee charge" rather than what it is – an improper use of owners' rental income.

95. Additionally, Section 4(f) of the 2018 RMA grants CVR Management a lien on Plaintiffs' property for any unpaid expenses or fees, including the Waterpark Amenity fees.

96. Starting with the January 2020 assessment (which is due on December 1, 2019), Section 12(b) of the 2018 RMA further allows CVR Management to charge owners a monthly fee for use of the waterpark. The waterpark fee would be withheld from Net Rental Income, and is subject to increases at CVR Management's sole discretion.

97. Under Section 9(b) of the 2018 RMA, Plaintiffs' guests will be charged $20 per day for waterpark passes. CVR Management reserves the right to raise that fee at its sole discretion.

98. According to Section 12(b) of the 2018 RMA, when an owner occupies their Condominium Unit, guests and members of the owner's family will be subject

to the same terms, conditions, and availability for any resort amenities, at the same charges, as any other paying resort guest.

99.    Section 5(b) of 2018 RMA is "new for this Agreement." It indicates that CVR Management will be charging maintenance, repair, and replacement items "at cost" to the owners.

100.    This section goes on to note, however, that CVR Management "will build required mark-ups, profits, overhead and payroll burden into its hourly rates being charged for labor being performed for these items." The rates are subject to change without notice and in the sole discretion of CVR Management.

101.    This provision acknowledges that owners will be charged "mark-ups" and "profit" in the form of higher hourly maintenance rates. Put another way, CVR Management's past practice included improper upcharges for maintenance, repair, and replacement items. Under the 2018 RMA, this practice will be permitted to continue in the form of higher so-called "hourly rates" that will continue to hide the true cost of these items and the degree to which CVR Management will "profit" at the cost of the owners.

102.    Section 27 of the 2018 RMA entitles CVR Management to attorney's fees and costs, which may be charged against an owner's account and reserve, "should [CVR Management] incur legal fees and expenses for the enforcement of this Agreement." This provision is yet another attempt to shield CVR Management against its mismanagement and misconduct, as it is designed to discourage even

meritorious legal action against CVR Management and conflicts with the general American Rule that parties are responsible for their own legal fees.

103. In sum, the 2018 RMA, in addition to requiring Condominium Unit owners to "acknowledge" that they have always been fully aware of The Club and its operation, requires owners to "acknowledge" that they have "received all requested information regarding the Rental Management Program."

104. In reality, owners were hardly aware of the millions of dollars in rental income being siphoned away from them through the operation of The Club.

105. In addition, as noted above, the 2018 RMA attempts to keep certain critical rental information such as any "source of reservations" by labelling the information "confidential."

106. Thus, there is no way the owners have been provided with full disclosure regarding the Rental Management Program. This provision is one more attempt, of many, to have owners retroactively sign away their important rights with no benefit or consideration in return.

### G. Michael Best & Friedrich Aids and Abets Defendants' Wrongdoing

107. At all relevant times, Nancy Haggerty of Michael Best & Friedrich, LLP ("Michael Best") provided legal services to Chula Vista, CVR, and Michael Kaminski, advising them during the sale and development of the condominiums, the execution of the RMA, and various other issues thereafter, including but not limited to the formation and running of the Club, the Waterpark Assessments to Plaintiffs, and the maintenance program.

108.    Despite the quantifiable negative impact on Plaintiffs, Michael Best and Ms. Haggerty encouraged Chula Vista to sell new Club memberships, collect and keep fees and dues from the Club members, and rent Plaintiffs' properties at discounted rates.

109.    With Ms. Haggerty's knowing participation and encouragement, the Chula Vista Defendants rented Plaintiffs' condominiums to Club members, and in doing so, Defendants unlawfully deprived Plaintiffs of their property and rental income.

110.    In addition to her role as counsel to the Chula Vista Defendants, Ms. Haggerty also served as legal counsel for the Association. In this capacity, she presided over Association meetings and provided legal advice or opinions to condominium unit owners at those meetings.  She actively participated in the election of Board members, aided in the preparation of the budget for Board approval, and monitored the day-to-day affairs of the Association.  Ms. Haggerty's participation at Association meetings is reflected in contemporaneously-taken minutes of those meetings.

111.    By virtue of her representation of the Association, Ms. Haggerty was therefore also counsel to each of the members of the Association, including Plaintiffs and the Class.

112.    Each member of the Association was an intended third-party beneficiary of Ms. Haggerty's representation of the Association.

113.     Ms. Haggerty's representation of the Association was for the primary and direct benefit of Plaintiffs and the Class, as members of the Association.

## JURY DEMAND

114.     Plaintiffs demand trial by jury in this action on each and every one of their claims.

## CLASS ACTION ALLEGATIONS

115.     Plaintiffs bring this action individually and as a class action on behalf of the following Class: All persons who owned a condominium unit at the Chula Vista Resort & Waterpark at any time between November 30, 2012 and the present day (the "Class").

116.     Plaintiffs reserve the right to redefine the Class prior to certification.

117.     Excluded from the Class is any entity in which any Defendant has a controlling interest, officers or directors of any Defendant, all government entities, and any justice or judicial officer presiding over this matter.

118.     This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

119.     The Class is so numerous that the individual joinder of all of its members is impracticable. The exact number and identities of members of the Class is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery.

120.    Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

i.   Whether Defendants' statements and omissions about The Club were false and misleading;

ii.  Whether Defendants' statements and omissions about The Club constituted fraud;

iii. Whether Defendants' conduct constitutes breach of fiduciary duty;

iv.  Whether Defendants' conduct constitutes conversion;

v.   Whether Defendants' conduct constitutes negligent misrepresentation;

vi.  Whether Defendants' conduct constitutes intentional misrepresentation;

vii. Whether Defendants' conduct constitutes theft by fraud;

viii. Whether Defendant's conduct constitutes a violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. 100.18, *et seq.*;

ix. Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the nature of such damages;

x. Whether Plaintiff and the Class are entitled to restitutionary relief;

xi. Whether Plaintiff and the Class are entitled to double and/or treble damages; and

xii. Whether Plaintiff and the Class are entitled to injunctive relief.

121. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendants' common course of conduct. Plaintiffs and all Class members have similarly lost rental income and property value on their condominium units, and continue to lose rental income and property value as of the filing of this Complaint. Plaintiffs and all Class members have also lost money and property value by being forced to pay exorbitant assessments, for which they received no benefit in return. Plaintiffs and all Class members have lost additional money by being forced to pay severely marked up prices for maintenance, repair, and replacement of household items in the condominium units. Through their course of conduct and the unlawful scheme described throughout this Complaint, Defendants have acted on grounds that apply generally to the Class, so that Plaintiffs' requested injunctive relief is appropriate with respect to the Class as a whole.

122. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in handling complex class litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class.

123. A Class Action is superior to other available means for the fair and efficient adjudication of the claims of the Class. Each individual Class member may lack the resources to undergo the burden and expense associated with individually prosecuting the complex, expensive, and extensive litigation necessary to establish Defendants' liability and obtain adequate compensation for the injuries sustained. Individualized litigation increases the expense and delay for all parties and multiplies the burden on the judicial system in handling the complex legal and factual issues present in this case. Individualized litigation also presents the potential for inconsistent and contradictory judgments. Conversely, a class action presents far fewer practical difficulties and provides several benefits, including single and efficient adjudication. Class treatment of the issues present in this case will ensure that each claimant receives a fair and consistent adjudication.

## COUNT I

## (Civil Conversion – Chula Vista, Inc.)

124. Plaintiffs incorporate by reference and re-allege paragraphs 1 through 123 as if fully set forth herein.

125. Plaintiffs have the legal ownership and right to possess their condominium units.

126. Under the RMA, Plaintiffs have a right to share the revenue derived from guest stays at their condominium units.

127. Chula Vista, Inc. operates The Club at Chula Vista, both individually and in conjunction with CVR Management, LLC.

128. By collecting membership fees and dues from Club members in return for substantially reduced rental prices for Plaintiffs' condominium units, Chula Vista, Inc. wrongfully misappropriated Plaintiffs' property and rental income for its own benefit and to Plaintiffs' detriment, in violation of Plaintiffs' property rights.

129. Additionally, by renting Plaintiffs' condominium units to Club members at highly discounted rates, Chula Vista, Inc. sacrificed rental income that should have been due to Plaintiffs, so that it could maximize other revenue aside from room rental charges, including but not limited to, Club membership fees and resort-related revenue, which are not shared with Plaintiffs.

130. As described in detail above, the Chula Vista Defendants used The Club to drive discounted traffic to the resort, at Plaintiffs' expense. Once in the resort, renting highly discounted rooms, Club members spent that money in properties controlled by the Chula Vista Defendants and Michael Kaminski, at the expense of Plaintiffs and the class.

131. Despite using Plaintiffs' condominium units to provide highly discounted room rentals to Club members, Chula Vista, Inc. did not share any revenue or profits from The Club or its other operations with Plaintiffs.

Case 2:18-cv-01890   Filed 11/30/18   Page 28 of 106   Document 1

132.    Plaintiffs did not consent to their condominium units being rented at discounted rates through The Club to Club members.

133.    Chula Vista, Inc.'s wrongful conduct seriously interfered with Plaintiffs' property rights in their condominium units. But for Chula Vista, Inc.'s wrongful conduct, Plaintiffs would have reaped higher rental revenues in the form of higher non-discounted rentals.

134.    By using Plaintiffs' condominium units as a revenue generator for its own sole benefit, Chula Vista, Inc. intended to interfere with Plaintiffs' possession of their condominium units.

135.    The aforementioned acts of Chula Vista, Inc. were knowing, willful, wanton, malicious, and oppressive, and were undertaken with intent to wrongfully convert Plaintiffs' property for its own monetary benefit, and Chula Vista, Inc.'s conduct justifies the awarding of exemplary and punitive damages.

136.    Chula Vista, Inc.'s wrongful conversion of Plaintiffs' property began in at least 2009 with the advent of The Club, and continues as of the date of filing of this Complaint.

137.    As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

138.    As a direct and proximate result of Chula Vista, Inc.'s acts of conversion, Plaintiffs have been deprived of their property rights in rental income, experienced

declining property values, and suffered significant damages in an amount to be proved at trial.

## COUNT II

### (Civil Conversion – CVR Management, LLC)

139. Plaintiffs incorporate by reference and re-allege paragraphs 1 through 138 as if fully set forth herein.

140. Plaintiffs have the legal ownership and right to possess their condominium units.

141. Under the RMA, Plaintiffs have a right to share the revenue derived from guest stays at their condominium units.

142. CVR Management, LLC operates The Club at Chula Vista, both individually and in conjunction with Chula Vista, Inc.

143. CVR Management, LLC operates and oversees the rental management program at Chula Vista.

144. By collecting membership fees from Club members in return for substantially reduced rental prices for Plaintiffs' condominium units, CVR wrongfully misappropriated Plaintiffs' property and rental income for its own benefit and to Plaintiffs' detriment, in violation of Plaintiffs' property rights.

145. Additionally, by renting Plaintiffs' condominium units to Club members at highly discounted rates, CVR sacrificed rental income that should have been due to Plaintiffs, so that it could maximize other revenue aside from room rental charges,

including but not limited to, Club membership fees and resort-related revenue, which are not shared with Plaintiffs.

146.   As described in detail above, the Chula Vista Defendants used The Club to drive discounted traffic to the resort, at Plaintiffs' expense. Once in the resort, renting highly discounted rooms, Club members spent that money in properties controlled by the Chula Vista Defendants and Michael Kaminski, at the expense of Plaintiffs and the class.

147.   Despite using Plaintiffs' condominium units to provide highly discounted room rentals to Club members, CVR did not share any revenue or profits from The Club with Plaintiffs.

148.   Plaintiffs did not consent to their condominium units being rented at discounted rates through The Club to Club members.

149.   CVR's wrongful conduct seriously interfered with Plaintiffs' property rights in their condominium units. But for CVR's wrongful conduct, Plaintiffs would have reaped higher rental revenues in the form of higher non-discounted rentals.

150.   By using Plaintiffs' condominium units as a revenue generator for its own sole benefit, CVR intended to interfere with Plaintiffs' possession of their condominium units.

151.   The aforementioned acts of CVR were knowing, willful, wanton, malicious, and oppressive, and were undertaken with intent to wrongfully convert Plaintiffs' property for its own monetary benefit, and CVR's conduct justifies the awarding of exemplary and punitive damages.

31

152.   CVR's wrongful conversion of Plaintiffs' property began in at least 2009 with the advent of The Club, and continues as of the date of filing of this Complaint.

153.   As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

154.   As a direct and proximate result of CVR's acts of conversion, Plaintiffs have been deprived of their property rights in rental income experienced declining property values and suffered significant damages in an amount to be proved at trial.

## COUNT III

## (Civil Conversion – Michael Kaminski)

155.   Plaintiffs incorporate by reference and re-allege paragraphs 1 through 154 as if fully set forth herein.

156.   Plaintiffs have the legal ownership and right to possess their condominium units.

157.   Under the RMA, Plaintiffs have a right to share the revenue derived from guest stays at their condominium units.

158.   Michael Kaminski is the majority owner and Chief Executive Officer of Chula Vista, including Chula Vista, Inc. and CVR Management, LLC. In that capacity, he operates The Club at Chula Vista, both individually and in conjunction with Chula Vista, Inc. and CVR Management, LLC.

159.   In addition, Michael Kaminski owns and/or operates multiple other businesses and business interests in and around Chula Vista, including but not

limited to, a golf course, indoor and outdoor waterparks, restaurants including "Kaminski's Trademark Chop House" and the "Kilbourn City Grill," a spa called the "Spa del Sol," sports facilities, roller coasters, and other various attractions and recreational enterprises.

160. Through CVR Management, LLC, Michael Kaminski originated, operates and oversees the rental management program at Chula Vista.

161. Michael Kaminski also formulated and implemented The Club at Chula Vista, as a way to lure new visitors to his various business interests within Chula Vista, including his namesake steak house, the waterparks, and the golf courses.

162. By collecting membership fees from Club members in return for substantially reduced rental prices for Plaintiffs' condominium units, Michael Kaminski wrongfully misappropriated Plaintiffs' property and rental income for his own benefit and to Plaintiffs' detriment, in violation of Plaintiffs' property rights.

163. Additionally, by renting Plaintiffs' condominium units to Club members at highly discounted rates, Michael Kaminski sacrificed rental income that should have been due to Plaintiffs, so that it could maximize other revenue aside from room rental charges, including but not limited to, Club membership fees and resort-related revenue, which are not shared with Plaintiffs.

164. In fact, Michael Kaminski converted Plaintiffs' property rights to drive revenue and profits away from Plaintiffs and the Class and to his personally held business enterprises.

165. As described in detail above, the Chula Vista Defendants used The Club to drive discounted traffic to the resort, at Plaintiffs' expense. Once in the resort, renting highly discounted rooms, Club members spent that money in properties controlled by the Chula Vista Defendants and Michael Kaminski, at the expense of Plaintiffs and the class.

166. Despite using Plaintiffs' condominium units to provide highly discounted room rentals to Club members, Michael Kaminski did not share, or cause to be shared, any revenue or profits from The Club with Plaintiffs.

167. Plaintiffs did not consent to their condominium units being rented at discounted rates through The Club to Club members.

168. Michael Kaminski's wrongful conduct seriously interfered with Plaintiffs' property rights in their condominium units. But for Michael Kaminski's wrongful conduct, Plaintiffs would have reaped higher rental revenues in the form of higher non-discounted rentals.

169. By using Plaintiffs' condominium units as a revenue generator for his own sole benefit, Michael Kaminski intended to interfere with Plaintiffs' possession of their condominium units.

170. The aforementioned acts of Michael Kaminski were knowing, willful, wanton, malicious, and oppressive, and were undertaken with intent to wrongfully convert Plaintiffs' property for his own monetary benefit, and Michael Kaminski's conduct justifies the awarding of exemplary and punitive damages.

171.     Michael Kaminski's wrongful conversion of Plaintiffs' property began in at least 2009 with the advent of The Club, and continues as of the date of filing of this Complaint.

172.     As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

173.     As a direct and proximate result of Michael Kaminski's acts of conversion, Plaintiffs have been deprived of their property rights in rental income experienced declining property values and suffered significant damages in an amount to be proved at trial.

## COUNT IV

## (Theft by Fraud – Chula Vista, Inc.)

174.     Plaintiffs incorporate by reference and re-allege paragraphs 1 through 173 as if fully set forth herein.

175.     Chula Vista, Inc. operates The Club at Chula Vista, both individually and in conjunction with CVR Management, LLC.

176.     Chula Vista, Inc., through its employees and/or agents, made false representations that The Club memberships have little or no effect on the value of Plaintiffs' property and rental income.  Specifically, Chula Vista, Inc. has never disclosed to the condominium unit owners that The Club's product, namely the memberships offered to the public, included—as an element of consideration—rental discounts to the rental inventory days that belonged solely to the condominium unit

owners. Further, Chula Vista, Inc. did not reveal that, while The Club was allowed to monetize and retain a property right belonging to the condominium unit owners, that the cost of the room discount ranging between 20% to 80% off the normal room rental rate was being passed along by The Club to the condominium association members.

177. Instead of disclosing to the condominium unit owners that The Club was monetizing and retaining a portion of the condominium unit owners' property, CVR through its employees and/or agents, advised condominium unit owners, including Plaintiffs that The Club was a "marketing program" and that any fees merely paid for the cost of advertising and marketing to Club members to get them in the door.

178. Chula Vista, Inc. made these statements condominium unit owners, including Plaintiffs, knowing them to be false.

179. Chula Vista Inc. made these statements to condominium unit owners, including Plaintiffs, with the intent to deceive and defraud Plaintiffs of their property and rental income.

180. As a result of its false representations, Chula Vista, Inc. gained additional revenue in the form of Club sales by effectively monetizing a fractional portion of Plaintiffs' property rights.

181. Plaintiffs have been deceived and defrauded by Chula Vista, Inc.'s false representations.

182. As the direct and proximate result of Chula Vista, Inc.'s false representations, condominium unit owners, including Plaintiffs, were defrauded by Chula Vista, Inc.

183. Furthermore, Chula Vista, Inc. has engaged, and continues to engage in, fraudulent theft through operation of the maintenance program. By charging Plaintiffs for marked up items and services, and misleading them about it, Chula Vista, Inc. is effectively stealing from Plaintiffs by fraudulent means.

184. Defendant's fraudulent conduct is ongoing as of the filing of this Complaint.

185. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

186. Plaintiffs seek an award of treble damages, attorneys' fees, and all costs of investigation and litigation.

## COUNT V

## (Theft by Fraud – CVR Management, LLC)

187. Plaintiffs incorporate by reference and re-allege paragraphs 186 as if fully set forth herein.

188. CVR Management, LLC operates The Club at Chula Vista, both individually and in conjunction with Chula Vista, Inc.

189. CVR, through its employees and/or agents, made false representations that The Club memberships have little or no effect on the value of Plaintiffs' property

and rental income. Specifically, CVR has never disclosed to the condominium unit owners that The Club's product, namely the memberships offered to the public, included—as an element of consideration—rental discounts to the rental inventory days that belonged solely to the condominium unit owners. Further, CVR did not reveal that, while The Club was allowed to monetize and retain a property right belonging to the condominium unit owners, that the cost of the room discount ranging between 20% to 80% off the normal room rental rate was being passed along by The Club to the condominium association members.

190. Instead of disclosing to the condominium unit owners that The Club was monetizing and retaining a portion of the condominium unit owners' property, CVR through its employees and/or agents, advised condominium unit owners, including Plaintiffs that The Club was a "marketing program" and that any fees merely paid for the cost of advertising and marketing to Club members to get them in the door.

191. CVR made these statements condominium unit owners, including Plaintiffs, knowing them to be false.

192. CVR made these statements to condominium unit owners, including Plaintiffs, with the intent to deceive and defraud Plaintiffs of their property and rental income.

193. As a result of its false representations, CVR gained additional revenue in the form of Club sales by effectively monetizing a fractional portion of Plaintiffs' property rights.

194.    Plaintiffs have been deceived and defrauded by CVR's false representations.

195.    As the direct and proximate result of CVR's false representations, condominium unit owners, including Plaintiffs, were defrauded by CVR.

196.    Furthermore, CVR has engaged, and continues to engage in, fraudulent theft through operation of the maintenance program. By charging Plaintiffs for marked up items and services, and misleading them about it, CVR is effectively stealing from Plaintiffs by fraudulent means.

197.    Defendant's fraudulent conduct is ongoing as of the filing of this Complaint.

198.    As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

199.    As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

200.    Plaintiffs seek an award of treble damages, attorneys' fees, and all costs of investigation and litigation.

## COUNT VI

## (Theft by Fraud – Michael Kaminski)

201.     Plaintiffs incorporate by reference and re-allege paragraphs 1 through 200 as if fully set forth herein.

202.    Michael Kaminski is the majority owner and Chief Executive Officer of Chula Vista, including Chula Vista, Inc. and CVR Management, LLC. In that capacity, he operates The Club at Chula Vista, both individually and in conjunction with Chula Vista, Inc. and CVR Management, LLC.

203.    In addition, Michael Kaminski owns and/or operates multiple other businesses and business interests in and around Chula Vista, including but not limited to, a golf course, indoor and outdoor waterparks, restaurants including "Kaminski's Trademark Chop House" and the "Kilbourn City Grill," a spa called the "Spa del Sol," sports facilities, roller coasters, and other various attractions and recreational enterprises.

204.    Michael Kaminski, personally and in his capacity as Chief Executive of Chula Vista, Inc., CVR Management, LLC, and The Club at Chula Vista, made false representations that The Club memberships have little or no effect on the value of Plaintiffs' property and rental income. Specifically, Michael Kaminski has never disclosed to the condominium unit owners that The Club's product, namely the memberships offered to the public, included—as an element of consideration—rental discounts to the rental inventory days that belonged solely to the condominium unit owners. Further, Michael Kaminski did not reveal that, while The Club was allowed to monetize and retain a property right belonging to the condominium unit owners, that the cost of the room discount ranging between 20% to 80% off the normal room rental rate was being passed along by The Club to the condominium association members.

205.    Instead of disclosing to the condominium unit owners that The Club was monetizing and retaining a portion of the condominium unit owners' property, Michael Kaminski advised condominium unit owners, including Plaintiffs that The Club was a "marketing program" and that any fees merely paid for the cost of advertising and marketing to Club members to get them in the door.

206.    Michael Kaminski made these statements condominium unit owners, including Plaintiffs, knowing them to be false.

207.    Michael Kaminski made these statements to condominium unit owners, including Plaintiffs, with the intent to deceive and defraud Plaintiffs of their property and rental income.

208.    Michael Kaminski intended to deceive and defraud Plaintiffs, so that he could rent out their condominium units at severely discounted rates, ensuring that new visitors would come to Chula Vista and spend that money in his personally held business enterprises, including his namesake steakhouse, the Water Parks, golf courses, and spa facilities.

209.    As a result of its false representations, Michael Kaminski gained additional revenue for the Chula Vista entities in the form of Club sales by effectively monetizing a fractional portion of Plaintiffs' property rights. He also gained new customers for his personally held business enterprises.

210.    Plaintiffs have been deceived and defrauded by Michael Kaminski's false representations.

211.    As the direct and proximate result of Michael Kaminski's false representations, condominium unit owners, including Plaintiffs, were defrauded by Michael Kaminski.

212.    Furthermore, Chula Vista, Inc. has engaged, and continues to engage in, fraudulent theft through operation of the maintenance program. By charging Plaintiffs for marked up items and services, and misleading them about it, Michael Kaminski is effectively stealing from Plaintiffs, and causing theft by the Chula Vista entities that he oversees, by fraudulent means.

213.    Defendant's fraudulent conduct is ongoing as of the filing of this Complaint.

214.    As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

215.    Plaintiffs seek an award of treble damages, attorneys' fees, and all costs of investigation and litigation.

## COUNT VII

## (Constructive Fraud – Chula Vista, Inc.)

216.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 215 as if fully set forth herein.

217.    Chula Vista, Inc. operates The Club at Chula Vista, both individually and in conjunction with CVR Management, LLC and Michael Kaminski.

218. Chula Vista, Inc., through its employees and/or agents, made false representations that The Club memberships have little or no effect on the value of Plaintiffs' property and rental income. Specifically, Chula Vista, Inc. has never disclosed to the condominium unit owners that The Club's product, namely the memberships offered to the public, included—as an element of consideration—rental discounts to the rental inventory days that belonged solely to the condominium unit owners. Further, Chula Vista, Inc. did not reveal that, while The Club was allowed to monetize and retain a property right belonging to the condominium unit owners, that the cost of the room discount ranging between 20% to 80% off the normal room rental rate was being passed along by The Club to the condominium association members.

219. Instead of disclosing to the condominium unit owners that The Club was monetizing and retaining a portion of the condominium unit owners' property, CVR through its employees and/or agents, advised condominium unit owners, including Plaintiffs that The Club was a "marketing program" and that any fees merely paid for the cost of advertising and marketing to Club members to get them in the door.

220. Chula Vista, Inc. made these statements condominium unit owners, including Plaintiffs, knowing them to be false.

221. Chula Vista Inc. made these statements to condominium unit owners, including Plaintiffs, with the intent to deceive and defraud Plaintiffs of their property and rental income.

222.   As a result of its false representations, Chula Vista, Inc. gained additional revenue in the form of Club sales by effectively monetizing a fractional portion of Plaintiffs' property rights.

223.   Plaintiffs have been deceived and defrauded by Chula Vista, Inc.'s false representations.

224.   As the direct and proximate result of Chula Vista, Inc.'s false representations, condominium unit owners, including Plaintiffs, were defrauded by Chula Vista, Inc.

225.   Furthermore, Chula Vista, Inc. has engaged, and continues to engage in, fraudulent theft through operation of the maintenance program and charging exorbitant assessments. By charging Plaintiffs for marked up items and services, and assessments from which they derive no benefit, and misleading them about it, Chula Vista, Inc. is effectively stealing from Plaintiffs by fraudulent means.

226.   Plaintiffs and the Class were engaged in a fiduciary relationship of trust with Chula Vista, Inc.

227.   Defendant's wrongful conduct was accomplished in part by an abuse of the fiduciary relationship between it and Plaintiffs.

228.   Defendant's fraudulent conduct is ongoing as of the filing of this Complaint.

229.   As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

230.   Plaintiffs seek an award of treble damages, attorneys' fees, and all costs of investigation and litigation.

## COUNT VIII

### (Constructive Fraud – CVR Management, LLC)

231.   Plaintiffs incorporate by reference and re-allege paragraphs 1 through 230 as if fully set forth herein.

232.   CVR Management, LLC operates The Club at Chula Vista, both individually and in conjunction with Chula Vista, Inc. and Michael Kaminski.

233.   Chula Vista, Inc., through its employees and/or agents, made false representations that The Club memberships have little or no effect on the value of Plaintiffs' property and rental income.  Specifically, CVR Management, LLC has never disclosed to the condominium unit owners that The Club's product, namely the memberships offered to the public, included—as an element of consideration—rental discounts to the rental inventory days that belonged solely to the condominium unit owners.  Further, CVR Management, LLC did not reveal that, while The Club was allowed to monetize and retain a property right belonging to the condominium unit owners, that the cost of the room discount ranging between 20% to 80% off the normal room rental rate was being passed along by The Club to the condominium association members.

234.   Instead of disclosing to the condominium unit owners that The Club was monetizing and retaining a portion of the condominium unit owners' property, CVR through its employees and/or agents, advised condominium unit owners, including

Plaintiffs that The Club was a "marketing program" and that any fees merely paid for the cost of advertising and marketing to Club members to get them in the door.

235.   CVR Management, LLC made these statements condominium unit owners, including Plaintiffs, knowing them to be false.

236.   CVR Management, LLC made these statements to condominium unit owners, including Plaintiffs, with the intent to deceive and defraud Plaintiffs of their property and rental income.

237.   As a result of its false representations, CVR Management, LLC gained additional revenue in the form of Club sales by effectively monetizing a fractional portion of Plaintiffs' property rights.

238.   Plaintiffs have been deceived and defrauded by CVR Management, LLC's false representations.

239.   As the direct and proximate result of CVR Management, LLC's false representations, condominium unit owners, including Plaintiffs, were defrauded by CVR Management, LLC

240.   Furthermore, CVR Management, LLC has engaged, and continues to engage in, fraudulent theft through operation of the maintenance program and charging exorbitant assessments. By charging Plaintiffs for marked up items and services, and assessments from which they derive no benefit, and misleading them about it, CVR Management, LLC is effectively stealing from Plaintiffs by fraudulent means.

241. Plaintiffs and the Class were engaged in a fiduciary relationship of trust with CVR Management, LLC.

242. Defendant's wrongful conduct was accomplished in part by an abuse of the fiduciary relationship between it and Plaintiffs.

243. Defendant's fraudulent conduct is ongoing as of the filing of this Complaint.

244. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

245. Plaintiffs seek an award of treble damages, attorneys' fees, and all costs of investigation and litigation.

## COUNT IX

## (Constructive Fraud – Michael Kaminski

246. Plaintiffs incorporate by reference and re-allege paragraphs 1 through 245 as if fully set forth herein.

247. Michael Kaminski operates The Club at Chula Vista, both individually and in conjunction with CVR Management, LLC and Chula Vista, Inc.

248. Michael Kaminski made false representations that The Club memberships have little or no effect on the value of Plaintiffs' property and rental income. Specifically, Michael Kaminski has never disclosed to the condominium unit owners that The Club's product, namely the memberships offered to the public, included—as an element of consideration—rental discounts to the rental inventory

days that belonged solely to the condominium unit owners. Further, Michael Kaminski did not reveal that, while The Club was allowed to monetize and retain a property right belonging to the condominium unit owners, that the cost of the room discount ranging between 20% to 80% off the normal room rental rate was being passed along by The Club to the condominium association members.

249.    Instead of disclosing to the condominium unit owners that The Club was monetizing and retaining a portion of the condominium unit owners' property, Michael Kaminski advised condominium unit owners, including Plaintiffs that The Club was a "marketing program" and that any fees merely paid for the cost of advertising and marketing to Club members to get them in the door.

250.    Michael Kaminski made these statements condominium unit owners, including Plaintiffs, knowing them to be false.

251.    Michael Kaminski made these statements to condominium unit owners, including Plaintiffs, with the intent to deceive and defraud Plaintiffs of their property and rental income.

252.    As a result of its false representations, Michael Kaminski gained additional revenue in the form of Club sales by effectively monetizing a fractional portion of Plaintiffs' property rights.

253.    Michael Kaminski also gained additional revenue for his personally held businesses by monetizing Plaintiffs' property rights.

254.    Plaintiffs have been deceived and defrauded by Michael Kaminski's false representations.

255. As the direct and proximate result of Michael Kaminski's false representations, condominium unit owners, including Plaintiffs, were defrauded by Chula Vista, Inc.

256. Furthermore, Michael Kaminski has engaged, and continues to engage in, fraudulent theft through operation of the maintenance program and charging exorbitant assessments. By charging Plaintiffs for marked up items and services, and assessments from which they derive no benefit, and misleading them about it, Michael Kaminski is effectively stealing from Plaintiffs by fraudulent means.

257. Plaintiffs and the Class were engaged in a fiduciary relationship of trust with Michael Kaminski.

258. Defendant's wrongful conduct was accomplished in part by an abuse of the fiduciary relationship between it and Plaintiffs.

259. Defendant's fraudulent conduct is ongoing as of the filing of this Complaint.

260. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

261. Plaintiffs seek an award of treble damages, attorneys' fees, and all costs of investigation and litigation.

## COUNT X

### (Constructive Fraud – Michael Best & Friedrich, LLP)

262. Plaintiffs incorporate by reference and re-allege paragraphs 1 through 261 as if fully set forth herein.

263. As condominium unit owners, Plaintiffs became members of the Chula Vista Condominium Unit Owners Association (the "Association").

264. At all relevant times, Michael Best, including partner Nancy Haggerty, Esq., acted as legal counsel to the Chula Vista Defendants, performing legal services necessary to complete the sale of the condominium units and the execution of the RMA with Plaintiffs.

265. Michael Best partner Nancy Haggerty also served as counsel to the Association and its members during Association meetings.

266. During the course of their attorney-client relationship, Ms. Haggerty communicated directly with Plaintiffs and the Class to provide legal advice and direction.

267. Plaintiffs and the Class believed that Ms. Haggerty, as their attorney, was acting in their best interests.

268. Ms. Haggerty had a conflict of interest by wearing multiple hats while her clients had competing economic interests relative to The Club.

269. On information and belief, Plaintiffs contend that Ms. Haggerty also advised Chula Vista during the creation and implementation of The Club program.

270.    During the course of their attorney-client relationship, Plaintiffs and the Class sought legal advice from Ms. Haggerty.

271.    On numerous occasions, certain owners objected to Chula Vista allowing The Club to convert their property rights, while further allowing rental of their condominium units at reduced rates. Owners also demanded an accounting of The Club, along with full disclosure to all Association members of The Club's impact upon their property rights, rental income, and the value of their condominium units, given the legacy duration of Club memberships that lasted upwards of twenty years.

272.    Despite these objections to The Club program and the financially devastating effect The Club memberships caused to their investment, Ms. Haggerty rebuffed the owners' repeated demands, despite also representing them as members of the Association.

273.    As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

274.    By putting off these objections, Ms. Haggerty consciously desired for Chula Vista to continue receiving revenue from Club memberships while wrongfully misappropriating Association members' property and rental income.

275.    Ms. Haggerty assisted the Chula Vista Defendants in their scheme to use The Club as a revenue generator, to the detriment of Plaintiffs.

276.    Ms. Haggerty's conflict of interest continued at least until her purported withdrawal as Association counsel on or around November 8, 2016.

277. By virtue of her attorney-client relationships, Ms. Haggerty, and Michael Best, knew that Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski were engaged in a fiduciary relationship with Plaintiffs.

278. By virtue of her attorney-client relationships, Ms. Haggerty, and Michael Best, knew that Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski owed Plaintiffs a fiduciary duty.

279. In spite of Ms. Haggerty's and Michael Best's knowledge that the Chula Vista Defendants owed Plaintiffs a fiduciary duty, Ms. Haggerty and Michael Best assisted the Chula Vista Defendants in breaching their fiduciary duty by helping them wrongfully convert Plaintiffs' condominium units into profit-generating vessels for the sole benefit of the Chula Vista Defendants, through use of The Club.

280. Michael Best and Ms. Haggerty's aiding and abetting the Chula Vista Defendants' breaches of fiduciary duty continues as of the filing of this Complaint.

281. Michael Best and Ms. Haggerty's aiding and abetting the Chula Vista Defendants' breaches of fiduciary duty were wrongful and negligent acts or omissions which caused injury to Plaintiffs and the Class.

282. Michael Best and Ms. Haggerty's wrongful conduct and dual representation despite a conflict of interest were breaches of the duty owed to Plaintiffs and the Class, who were clients of Michael Best and Ms. Haggerty.

283. As a direct and proximate result of one or more of the above wrongful acts, Defendants have already caused and will continue to cause Plaintiffs significant

damage in the form of past and future lost net rental income and declining property values

284.   Plaintiffs and the Class were engaged in a fiduciary relationship of trust with Chula Vista, Inc.

285.   Defendant's wrongful conduct was accomplished in part by an abuse of the fiduciary relationship between it and Plaintiffs.

286.   Defendant's fraudulent conduct is ongoing as of the filing of this Complaint.

287.   As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

288.   Plaintiffs seek an award of treble damages, attorneys' fees, and all costs of investigation and litigation.

## COUNT XI

### (Constructive Fraud – Nancy Haggerty, Esq.)

289.   Plaintiffs incorporate by reference and re-allege paragraphs 1 through 288 as if fully set forth herein.

290.   As condominium unit owners, Plaintiffs became members of the Chula Vista Condominium Unit Owners Association (the "Association").

291.   At all relevant times, Michael Best, including partner Nancy Haggerty, Esq., acted as legal counsel to the Chula Vista Defendants, performing legal services

necessary to complete the sale of the condominium units and the execution of the RMA with Plaintiffs.

292.   Michael Best partner Nancy Haggerty also served as counsel to the Association and its members during Association meetings.

293.   During the course of their attorney-client relationship, Ms. Haggerty communicated directly with Plaintiffs and the Class to provide legal advice and direction.

294.   Plaintiffs and the Class believed that Ms. Haggerty, as their attorney, was acting in their best interests.

295.   Ms. Haggerty had a conflict of interest by wearing multiple hats while her clients had competing economic interests relative to The Club.

296.   On information and belief, Plaintiffs contend that Ms. Haggerty also advised Chula Vista during the creation and implementation of The Club program.

297.   During the course of their attorney-client relationship, Plaintiffs and the Class sought legal advice from Ms. Haggerty.

298.   On numerous occasions, certain owners objected to Chula Vista allowing The Club to convert their property rights, while further allowing rental of their condominium units at reduced rates. Owners also demanded an accounting of The Club, along with full disclosure to all Association members of The Club's impact upon their property rights, rental income, and the value of their condominium units, given the legacy duration of Club memberships that lasted upwards of twenty years.

299. Despite these objections to The Club program and the financially devastating effect The Club memberships caused to their investment, Ms. Haggerty rebuffed the owners' repeated demands, despite also representing them as members of the Association.

300. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

301. By putting off these objections, Ms. Haggerty consciously desired for Chula Vista to continue receiving revenue from Club memberships while wrongfully misappropriating Association members' property and rental income.

302. Ms. Haggerty assisted the Chula Vista Defendants in their scheme to use The Club as a revenue generator, to the detriment of Plaintiffs.

303. Ms. Haggerty's conflict of interest continued at least until her purported withdrawal as Association counsel on or around November 8, 2016.

304. By virtue of her attorney-client relationships, Ms. Haggerty, and Michael Best, knew that Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski were engaged in a fiduciary relationship with Plaintiffs.

305. By virtue of her attorney-client relationships, Ms. Haggerty, and Michael Best, knew that Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski owed Plaintiffs a fiduciary duty.

306. In spite of Ms. Haggerty's and Michael Best's knowledge that the Chula Vista Defendants owed Plaintiffs a fiduciary duty, Ms. Haggerty and Michael Best

assisted the Chula Vista Defendants in breaching their fiduciary duty by helping them wrongfully convert Plaintiffs' condominium units into profit-generating vessels for the sole benefit of the Chula Vista Defendants, through use of The Club.

307. Michael Best and Ms. Haggerty's aiding and abetting the Chula Vista Defendants' breaches of fiduciary duty continues as of the filing of this Complaint.

308. Michael Best and Ms. Haggerty's aiding and abetting the Chula Vista Defendants' breaches of fiduciary duty were wrongful and negligent acts or omissions which caused injury to Plaintiffs and the Class.

309. Michael Best and Ms. Haggerty's wrongful conduct and dual representation despite a conflict of interest were breaches of the duty owed to Plaintiffs and the Class, who were clients of Michael Best and Ms. Haggerty.

310. As a direct and proximate result of one or more of the above wrongful acts, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income and declining property values

311. Plaintiffs and the Class were engaged in a fiduciary relationship of trust with Chula Vista, Inc.

312. Defendant's wrongful conduct was accomplished in part by an abuse of the fiduciary relationship between it and Plaintiffs.

313. Defendant's fraudulent conduct is ongoing as of the filing of this Complaint.

314. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

315. Plaintiffs seek an award of treble damages, attorneys' fees, and all costs of investigation and litigation.

## COUNT XII

### (Breach of Fiduciary Duty – Chula Vista, Inc.)

316. Plaintiffs incorporate by reference and re-allege paragraphs 1 through 315 as if fully set forth herein.

317. Chula Vista, Inc. operates The Club at Chula Vista, both individually and in conjunction with CVR Management, LLC.

318. Chula Vista, Inc. operates the resort and oversees the rental management program, which includes controlling rental activity and managing cash payments and disbursements.

319. As such, Chula Vista, Inc. and the condominium unit owners, including Plaintiffs, are in a relationship of trust and confidence.

320. By virtue of its relationship with the condominium unit owners, Chula Vista, Inc. owes a fiduciary duty to condominium unit owners, including Plaintiffs.

321. Chula Vista, Inc. breached its fiduciary duty to Plaintiffs by wrongfully converting Plaintiffs' condominium units into profit-generating vessels for the sole benefit of Chula Vista, Inc. and its members, through use of The Club.

322. Chula Vista, Inc.'s breach continues as of the filing of this Complaint.

323.    As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

324.    As a direct and proximate result of Chula Vista, Inc.'s breach of fiduciary duty, Plaintiffs and the Class have suffered damages directly caused by the breach, in an amount to be proved at trial.

## COUNT XIII

## (Breach of Fiduciary Duty – CVR Management, LLC)

325.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 324 as if fully set forth herein.

326.    CVR Management, LLC operates The Club at Chula Vista, both individually and in conjunction with Chula Vista, Inc.

327.    CVR operates and oversees the rental management program, which includes controlling rental activity and managing cash payments and disbursements.

328.    As such, CVR and the condominium unit owners, including Plaintiffs, are in a relationship of trust and confidence.

329.    By virtue of its relationship with the condominium unit owners, CVR owes a fiduciary duty to condominium unit owners, including Plaintiffs.

330.    CVR breached its fiduciary duty to Plaintiffs by wrongfully converting Plaintiffs' condominium units into profit-generating vessels for the sole benefit of CVR and its members, through use of The Club.

331.    CVR's breach continues as of the filing of this Complaint.

332.    As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

333.    As a direct and proximate result of CVR's breach of fiduciary duty, Plaintiffs and the Class have suffered damages directly caused by the breach, in an amount to be proved at trial.

## COUNT XIV

## (Breach of Fiduciary Duty – Michael Kaminski)

334.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 333 as if fully set forth herein.

335.    Michael Kaminski is the majority owner and Chief Executive Officer of Chula Vista, including Chula Vista, Inc. and CVR Management, LLC. In that capacity, he operates The Club at Chula Vista, both individually and in conjunction with Chula Vista, Inc. and CVR Management, LLC.

336.    In addition, Michael Kaminski owns and/or operates multiple other businesses and business interests in and around Chula Vista, including but not limited to, a golf course, indoor and outdoor waterparks, restaurants including "Kaminski's Trademark Chop House" and the "Kilbourn City Grill," a spa called the "Spa del Sol," sports facilities, roller coasters, and other various attractions and recreational enterprises.

337.   Through CVR, Michael Kaminski operates and oversees the rental management program. As such, Michael Kaminski and the condominium unit owners, including Plaintiffs, are in a relationship of trust and confidence.

338.   By virtue of his relationship with the condominium unit owners, Michael Kaminski owes a fiduciary duty to condominium unit owners, including Plaintiffs.

339.   Michael Kaminski breached his fiduciary duty to Plaintiffs by causing the wrongful conversion of Plaintiffs' condominium units into profit-generating vessels for the sole benefit of himself, Chula Vista, Inc., CVR, and its members, through use of The Club.

340.   Michael Kaminski's breach was motivated by his own economic self-interest, in that he put target customers of his personally held business enterprises above the interests of the condominium unit owners, including Plaintiffs.

341.   Michael Kaminski's breach continues as of the filing of this Complaint.

342.   As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

As a direct and proximate result of Michael Kaminski's breach of fiduciary duty, Plaintiffs and the Class have suffered damages directly caused by the breach, in an amount to be proved at trial.

## COUNT XV

## (Negligent Misrepresentation – CVR Management, LLC)

343.   Plaintiffs incorporate by reference and re-allege paragraphs 1 through 342 as if fully set forth herein.

344.   As the operator of the rental management program and The Club, CVR owed condominium unit owners, including Plaintiffs and the Class, a duty of care.

345.   Specifically, CVR owed Plaintiffs a duty of care to fully disclose all material terms of The Club membership, including any discounts to Club members that might affect the revenue sharing provision of the RMA, prior to the introduction of the Club program.

346.   CVR knew or reasonably should have known that the existence of Club memberships and the rental discounts offered to Club members would impact the nightly rental income generated by the condominium units owned by Plaintiffs.

347.   CVR knew that neither the Chula Vista Defendants nor The Club owned the condominium units or the rental inventory that was attached to the condominium units.

348.   CVR knew or should have known that The Club had no legal right to create a product to sell to the public that monetized a portion of the condominium association members' property.

349.   Furthermore, CVR, through its agents and/or employees, misrepresented to Plaintiffs and the Class that The Club was a "marketing" program, rather than a program that sought to convert and monetize their condominium units.

350. CVR breached its duty of care to Plaintiffs and made negligent misrepresentations to Plaintiffs in in one or more of the following ways:

     a.    Represented that The Club was a "marketing" program, which was a material misrepresentation;

     b.    Failed to disclose the concept of the Club and the discounts extended to dues-paying Club members and their guests in monthly newsletters, Condominium Association meetings, or other correspondence with condominium unit owners, including Plaintiffs;

     c.    Failed to disclose its plan to make the condominium units available to Club members at substantially reduced rates;

     d.    Failed to apprise Plaintiffs about how The Club would affect maximum net rental income under the RMA; and

     e.    Failed to disclose that The Club was offering for sale to the public a product that was effectively monetizing property rights of the condominium association members.

351. CVR's representations that The Club was a "marketing" program began at least six years ago and continue as of the filing of this Complaint.

352. CVR's representations of fact that The Club was a "marketing" program were untrue.

353. Plaintiffs believed such representations were true, and, by allowing their condominium units to remain in the rental management program and subject to Club discounts, were damaged.

354. The Chula Vista Defendants continue to represent The Club as a marketing program or a "private loyalty program" as of the filing of this Complaint.

355. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

356. As a direct and proximate result of one or more of the above careless and/or negligent acts and negligent misrepresentations, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income.

## COUNT XVI

## (Negligent Misrepresentation – Chula Vista, Inc.)

357. Plaintiffs incorporate by reference and re-allege paragraphs 1 through 356 as if fully set forth herein.

358. As the operator of the rental management program and The Club, along with CVR, Chula Vista, Inc. owed condominium unit owners, including Plaintiffs and the Class, a duty of care.

359. Specifically, Chula Vista, Inc. owed Plaintiffs a duty of care to fully disclose all material terms of The Club membership, including any discounts to Club

members that might affect the revenue sharing provision of the RMA, prior to the introduction of the Club program.

360. Chula Vista, Inc. knew or reasonably should have known that the existence of Club memberships and the rental discounts offered to Club members would impact the nightly rental income generated by the condominium units owned by Plaintiffs.

361. Chula Vista, Inc. knew that neither the Chula Vista Defendants nor The Club owned the condominium units or the rental inventory that was attached to the condominium units.

362. Chula Vista, Inc. knew or should have known that The Club had no legal right to create a product to sell to the public that monetized a portion of the condominium association members' property.

363. Furthermore, Chula Vista, Inc., through its agents and/or employees, misrepresented to Plaintiffs and the Class that The Club was a "marketing" program, rather than a program that sought to convert and monetize their condominium units.

364. Chula Vista, Inc. breached its duty of care to Plaintiffs and made negligent misrepresentations to Plaintiffs in in one or more of the following ways:

      a.    Represented that The Club was a "marketing" program, which was a material misrepresentation;

      b.    Failed to disclose the concept of the Club and the discounts extended to dues-paying Club members and their guests in monthly newsletters, Condominium Association meetings,

or other correspondence with condominium unit owners, including Plaintiffs;

c.   Failed to disclose its plan to make the condominium units available to Club members at substantially reduced rates;

d.   Failed to apprise Plaintiffs about how The Club would affect maximum net rental income under the RMA; and

e.   Failed to disclose that The Club was offering for sale to the public a product that was effectively monetizing property rights of the condominium association members.

365.   CVR's representations that The Club was a "marketing" program began at least six years ago and continue as of the filing of this Complaint.

366.   Chula Vista, Inc.'s representations of fact that The Club was a "marketing" program were untrue.

367.   Plaintiffs believed such representations were true, and, by allowing their condominium units to remain in the rental management program and subject to Club discounts, were damaged.

368.   The Chula Vista Defendants continue to represent The Club as a marketing program or a "private loyalty program" as of the filing of this Complaint.

369.   As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

370.    As a direct and proximate result of one or more of the above careless and/or negligent acts and negligent misrepresentations, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income and declining property values.

## COUNT XVII

## (Negligent Misrepresentation – Michael Kaminski)

371.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 370 as if fully set forth herein.

372.    Michael Kaminski is the majority owner and Chief Executive Officer of Chula Vista, including Chula Vista, Inc. and CVR Management, LLC. In that capacity, he operates The Club at Chula Vista, both individually and in conjunction with Chula Vista, Inc. and CVR Management, LLC.

373.    As the executive in charge of, and operator of, the rental management program and The Club, Michael Kaminski owed condominium unit owners, including Plaintiffs and the Class, a duty of care.

374.    Specifically, Michael Kaminski owed Plaintiffs a duty of care to fully disclose all material terms of The Club membership, including any discounts to Club members that might affect the revenue sharing provision of the RMA, prior to the introduction of the Club program.

375.    Michael Kaminski knew or reasonably should have known that the existence of Club memberships and the rental discounts offered to Club members

would impact the nightly rental income generated by the condominium units owned by Plaintiffs.

376. Michael Kaminski knew that neither the Chula Vista Defendants nor The Club owned the condominium units or the rental inventory that was attached to the condominium units.

377. Michael Kaminski knew or should have known that The Club had no legal right to create a product to sell to the public that monetized a portion of the condominium association members' property.

378. Furthermore, Michael Kaminski misrepresented to Plaintiffs and the Class that The Club was a "marketing" program, rather than a program that sought to convert and monetize their condominium units.

379. Michael Kaminski breached his duty of care to Plaintiffs and made negligent misrepresentations to Plaintiffs in in one or more of the following ways:

     a.    Represented that The Club was a "marketing" program, which was a material misrepresentation;

     b.    Failed to disclose the concept of the Club and the discounts extended to dues-paying Club members and their guests in monthly newsletters, Condominium Association meetings, or other correspondence with condominium unit owners, including Plaintiffs;

     c.    Failed to disclose its plan to make the condominium units available to Club members at substantially reduced rates;

d. Failed to apprise Plaintiffs about how The Club would affect maximum net rental income under the RMA; and

e. Failed to disclose that The Club was offering for sale to the public a product that was effectively monetizing property rights of the condominium association members.

380. Michael Kaminski's representations that The Club was a "marketing" program began at least six years ago and continue as of the filing of this Complaint.

381. Michael Kaminski's representations of fact that The Club was a "marketing" program were untrue.

382. Plaintiffs believed such representations were true, and, by allowing their condominium units to remain in the rental management program and subject to Club discounts, were damaged.

383. Michael Kaminski continues to represent The Club as a marketing program or a "private loyalty program" as of the filing of this Complaint.

384. Michael Kaminski's representations and omissions have been, and continue to be, motivated by his own self-interest, in an effort to lure customers to his personally held business enterprises, including his namesake steakhouse, the Water Parks, golf courses, and spa facilities.

385. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

386.    As a direct and proximate result of one or more of the above careless and/or negligent acts and negligent misrepresentations, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income and declining property values.

## COUNT XVIII

### (Negligent Misrepresentation – Michael Best & Friedrich, LLP)

387.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 386 as if fully set forth herein.

388.    Michael Best, and Ms. Nancy Haggerty specifically, voluntarily assumed a duty of care to Plaintiffs when acting as counsel to the Association and its members and specifically advising the members about The Club program.

389.    Specifically, Michael Best owed Plaintiffs a duty of care to fully disclose all material terms of The Club membership, including any discounts to Club members that might affect the revenue sharing provision of the RMA, prior to the introduction of the Club program.

390.    Michael Best knew or reasonably should have known that the existence of Club memberships and the rental discounts offered to Club members would impact the nightly rental income generated by the Association members' condominium units.

391.    Michael Best knew or should have known that neither the Chula Vista defendants nor The Club owned the condominiums or the rental inventory that was attached to the condominium units.

392. Michael Best knew or should have known that The Club had no legal right to create a product to sell to the public that monetized a portion of the condominium association members' property.

393. To the extent that Ms. Nancy Haggerty or Michael Best came to realize property rights were being wrongfully taken by The Club, then they had a duty to immediately disclose this activity and its possible repercussions to the condominium Association members.

394. Michael Best breached its duty of care to the Association members, and Plaintiffs in particular, in one or more of the following ways:

    a. Failed to disclose the concept of the Club and the discounts extended to dues-paying Club members and their guests in monthly newsletters or Association meetings;

    b. Failed to disclose Chula Vista's plan to make the Condominiums available to Club members at substantially reduced rates;

    c. Failed to apprise Plaintiffs about how The Club would affect Plaintiffs' maximum net rental income under the RMA; and

    d. Failed to disclose that The Club was offering for sale to the public a product that was effectively monetizing property rights of the condominium association members.

395.    Michael Best's statements and disclosures to Plaintiffs that The Club was advantageous to them and their rental income were untrue.

396.    Michael Best's statements and disclosures to Plaintiffs occurred up to and until the time of its withdrawal as counsel for the Association on or around November 8, 2016.

397.    Plaintiffs believed such representations were true, and, by allowing their condominium units to remain in the rental management program and subject to Club discounts, were damaged.

398.    As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

399.    As a direct and proximate result of one or more of the above careless and/or negligent acts, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income and declining property values.

## COUNT XIX

### (Intentional Misrepresentation – CVR Management, LLC)

400.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 399 as if fully set forth herein.

401.    As the operator of the rental management program and The Club, CVR owed condominium unit owners, including Plaintiffs and the Class, a duty of care.

402.    Specifically, CVR owed Plaintiffs a duty of care to fully disclose all material terms of The Club membership, including any discounts to Club members that might affect the revenue sharing provision of the RMA, prior to the introduction of the Club program.

403.    CVR knew or reasonably should have known that the existence of Club memberships and the rental discounts offered to Club members would impact the nightly rental income generated by the condominium units owned by Plaintiffs.

404.    CVR knew that neither the Chula Vista Defendants nor The Club owned the condominium units or the rental inventory that was attached to the condominium units.

405.    CVR knew or should have known that The Club had no legal right to create a product to sell to the public that monetized a portion of the condominium association members' property.

406.    Furthermore, CVR, through its agents and/or employees, misrepresented to Plaintiffs and the Class that The Club was a "marketing" program, rather than a program that sought to convert and monetize their condominium units.

407.    CVR breached its duty of care to Plaintiffs and made negligent misrepresentations to Plaintiffs in in one or more of the following ways:

    a.    Represented that The Club was a "marketing" program, which was a material misrepresentation;

    b.    Failed to disclose the concept of the Club and the discounts extended to  dues-paying Club members and their guests

in monthly newsletters, Condominium Association meetings, or other correspondence with condominium unit owners, including Plaintiffs;

c.     Failed to disclose its plan to make the condominium units available to Club members at substantially reduced rates;

d.     Failed to apprise Plaintiffs about how The Club would affect maximum net rental income under the RMA; and

e.     Failed to disclose that The Club was offering for sale to the public a product that was effectively monetizing property rights of the condominium association members.

408.     CVR's representations that The Club was a "marketing" program began at least six years ago and continue as of the filing of this Complaint.

409.     CVR's representations of fact that The Club was a "marketing" program were untrue.

410.     At the time of its misrepresentations, CVR knew they were false and made them with the intent that Plaintiffs rely on them.

411.     Plaintiffs believed such representations were true, and, by allowing their condominium units to remain in the rental management program and subject to Club discounts, were damaged.

412.     As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

413.   As a direct and proximate result of one or more of the intentional acts, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income and declining property values.

## COUNT XX

## (Intentional Misrepresentation – Chula Vista, Inc.)

414.   Plaintiffs incorporate by reference and re-allege paragraphs 1 through 413 as if fully set forth herein.

415.   As the operator of the rental management program and The Club, along with CVR, Chula Vista, Inc. owed condominium unit owners, including Plaintiffs and the Class, a duty of care.

416.   Specifically, Chula Vista, Inc. owed Plaintiffs a duty of care to fully disclose all material terms of The Club membership, including any discounts to Club members that might affect the revenue sharing provision of the RMA, prior to the introduction of the Club program.

417.   Chula Vista, Inc. knew or reasonably should have known that the existence of Club memberships and the rental discounts offered to Club members would impact the nightly rental income generated by the condominium units owned by Plaintiffs.

418.   Chula Vista, Inc. knew that neither the Chula Vista Defendants nor The Club owned the condominium units or the rental inventory that was attached to the condominium units.

419. Chula Vista, Inc. knew or should have known that The Club had no legal right to create a product to sell to the public that monetized a portion of the condominium association members' property.

420. Furthermore, Chula Vista, Inc., through its agents and/or employees, misrepresented to Plaintiffs and the Class that The Club was a "marketing" program, rather than a program that sought to convert and monetize their condominium units.

421. Chula Vista, Inc. breached its duty of care to Plaintiffs and made negligent misrepresentations to Plaintiffs in in one or more of the following ways:

    a.    Represented that The Club was a "marketing" program, which was a material misrepresentation;

    b.    Failed to disclose the concept of the Club and the discounts extended to dues-paying Club members and their guests in monthly newsletters, Condominium Association meetings, or other correspondence with condominium unit owners, including Plaintiffs;

    c.    Failed to disclose its plan to make the condominium units available to Club members at substantially reduced rates;

    d.    Failed to apprise Plaintiffs about how The Club would affect maximum net rental income under the RMA; and

    e.    Failed to disclose that The Club was offering for sale to the public a product that was effectively monetizing property rights of the condominium association members.

422.    CVR's representations that The Club was a "marketing" program began at least six years ago and continue as of the filing of this Complaint.

423.    Chula Vista, Inc.'s representations of fact that The Club was a "marketing" program were untrue.

424.    At the time of its misrepresentations, Chula Vista, Inc. knew they were false and made them with the intent that Plaintiffs rely on them.

425.    Plaintiffs believed such representations were true, and, by allowing their condominium units to remain in the rental management program and subject to Club discounts, were damaged.

426.    As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

427.    As a direct and proximate result of one or more of the intentional acts, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income and declining property values.

## COUNT XXI

### (Intentional Misrepresentation – Michael Kaminski)

428.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 427 as if fully set forth herein.

429.    Michael Kaminski is the majority owner and Chief Executive Officer of Chula Vista, including Chula Vista, Inc. and CVR Management, LLC. In that

capacity, he operates The Club at Chula Vista, both individually and in conjunction with Chula Vista, Inc. and CVR Management, LLC.

430.   In addition, Michael Kaminski owns and/or operates multiple other businesses and business interests in and around Chula Vista, including but not limited to, a golf course, indoor and outdoor waterparks, restaurants including "Kaminski's Trademark Chop House" and the "Kilbourn City Grill," a spa called the "Spa del Sol," sports facilities, roller coasters, and other various attractions and recreational enterprises.

431.   As the executive in charge of, and operator of, the rental management program and The Club, Michael Kaminski owed condominium unit owners, including Plaintiffs and the Class, a duty of care.

432.   Specifically, Michael Kaminski owed Plaintiffs a duty of care to fully disclose all material terms of The Club membership, including any discounts to Club members that might affect the revenue sharing provision of the RMA, prior to the introduction of the Club program.

433.   Michael Kaminski knew or reasonably should have known that the existence of Club memberships and the rental discounts offered to Club members would impact the nightly rental income generated by the condominium units owned by Plaintiffs.

434.   Michael Kaminski knew that neither the Chula Vista Defendants nor The Club owned the condominium units or the rental inventory that was attached to the condominium units.

435.     Michael Kaminski knew or should have known that The Club had no legal right to create a product to sell to the public that monetized a portion of the condominium association members' property.

436.     Furthermore, Michael Kaminski misrepresented to Plaintiffs and the Class that The Club was a "marketing" program, rather than a program that sought to convert and monetize their condominium units.

437.     Michael Kaminski breached his duty of care to Plaintiffs and made negligent misrepresentations to Plaintiffs in in one or more of the following ways:

a.     Represented that The Club was a "marketing" program, which was a material misrepresentation;

b.     Failed to disclose the concept of the Club and the discounts extended to dues-paying Club members and their guests in monthly newsletters, Condominium Association meetings, or other correspondence with condominium unit owners, including Plaintiffs;

c.     Failed to disclose its plan to make the condominium units available to Club members at substantially reduced rates;

d.     Failed to apprise Plaintiffs about how The Club would affect maximum net rental income under the RMA; and

e.     Failed to disclose that The Club was offering for sale to the public a product that was effectively monetizing property rights of the condominium association members.

438. Michael Kaminski's representations that The Club was a "marketing" program began at least six years ago and continue as of the filing of this Complaint.

439. Michael Kaminski's representations of fact that The Club was a "marketing" program were untrue.

440. At the time of his misrepresentations, Michael Kaminski knew they were false and made them with the intent that Plaintiffs rely on them.

441. Plaintiffs believed such representations were true, and, by allowing their condominium units to remain in the rental management program and subject to Club discounts, were damaged.

442. Michael Kaminski continues to represent The Club as a marketing program or a "private loyalty program" as of the filing of this Complaint.

443. Michael Kaminski's representations and omissions have been, and continue to be, motivated by his own self-interest, in an effort to lure customers to his personally held business enterprises, including his namesake steakhouse, the Water Parks, golf courses, and spa facilities.

444. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

445. As a direct and proximate result of one or more of the above intentional acts, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income and declining property values.

## COUNT XXII

## (Aiding and Abetting Conversion – Michael Best & Friedrich, LLP)

446.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 445 as if fully set forth herein.

447.    At all relevant times, Michael Best, including partner Nancy Haggerty, Esq., acted as legal counsel to the Chula Vista Defendants, performing legal services necessary to complete the sale of the condominium units and the execution of the RMA with Plaintiffs.

448.    Michael Best partner Nancy Haggerty also served as counsel to the Association and its members during Association meetings.

449.    By virtue of her representation of the Association, Ms. Haggerty was therefore also counsel to each of the members of the Association, including Plaintiffs and the Class.

450.    Each member of the Association was an intended third-party beneficiary of Ms. Haggerty's representation of the Association.

451.    Ms. Haggerty had a conflict of interest by wearing multiple hats while her clients had competing economic interests relative to The Club.

452.    On information and belief, Plaintiffs contend that Ms. Haggerty also advised Chula Vista during the creation and implementation of The Club program.

453.    On numerous occasions, certain owners objected to Chula Vista allowing The Club to convert their property rights, while further allowing rental of their condominium units at reduced rates. Owners also demanded an accounting of The

Club, along with full disclosure to all Association members of The Club's impact upon their property rights, rental income, and the value of their condominium units, given the legacy duration of Club memberships that lasted upwards of twenty years.

454.    Despite these objections to The Club program and the financially devastating effect that Club memberships caused to their investment, Ms. Haggerty rebuffed the owners' repeated demands.

455.    As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

456.    By putting off these objections, Ms. Haggerty consciously desired for Chula Vista to continue receiving revenue from Club memberships while wrongfully misappropriating Association members' property and rental income.

457.    Ms. Haggerty assisted the Chula Vista Defendants in their scheme to use The Club as a revenue generator, to the detriment of Plaintiffs.

458.    Ms. Haggerty's conflict of interest continued at least until her purported withdrawal as Association counsel on or around November 8, 2016.

459.    Michael Best and Ms. Haggerty's aiding and abetting the Chula Vista Defendants' wrongful conversion of Plaintiffs' property continues as of the filing of this Complaint.

460.    As a direct and proximate result of one or more of the above wrongful acts, Defendants have already caused and will continue to cause Plaintiffs significant

damage in the form of past and future lost net rental income and declining property values.

## COUNT XXIII

### (Aiding and Abetting Breach of Fiduciary Duty – Michael Best & Friedrich, LLP)

461. Plaintiffs incorporate by reference and re-allege paragraphs 1 through 460 as if fully set forth herein.

462. At all relevant times, Michael Best, including partner Nancy Haggerty, Esq., acted as legal counsel to the Chula Vista Defendants, performing legal services necessary to complete the sale of the condominium units and the execution of the RMA with Plaintiffs.

463. Michael Best partner Nancy Haggerty also served as counsel to the Association and its members during Association meetings.

464. By virtue of her representation of the Association, Michael Best partner Nancy Haggerty was therefore also counsel to each of the members of the Association, including Plaintiffs and the Class.

465. Each member of the Association was an intended third-party beneficiary of Ms. Haggerty's representation of the Association.

466. Ms. Haggerty had a conflict of interest by wearing multiple hats while her clients had competing economic interests relative to The Club.

467. On information and belief, Plaintiffs contend that Ms. Haggerty also advised Chula Vista during the creation and implementation of The Club program.

468. On numerous occasions, certain owners objected to Chula Vista allowing The Club to convert their property rights, while further allowing rental of their condominium units at reduced rates. Owners also demanded an accounting of The Club, along with full disclosure to all Association members of The Club's impact upon their property rights, rental income, and the value of their condominium units, given the legacy duration of Club memberships that lasted upwards of twenty years.

469. Despite these objections to The Club program and the financially devastating effect The Club memberships caused to their investment, Ms. Haggerty rebuffed the owners' repeated demands.

470. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

471. By putting off these objections, Ms. Haggerty consciously desired for Chula Vista to continue receiving revenue from Club memberships while wrongfully misappropriating Association members' property and rental income.

472. Ms. Haggerty assisted the Chula Vista Defendants in their scheme to use The Club as a revenue generator, to the detriment of Plaintiffs.

473. Ms. Haggerty's willingness to assist Chula Vista in this endeavor is recorded in written communications with Plaintiffs' litigation counsel.

474. Ms. Haggerty's conflict of interest continued at least until her purported withdrawal as Association counsel on or around November 8, 2016.

475.     By virtue of her attorney-client relationships, Ms. Haggerty, and Michael Best, knew that Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski were engaged in a fiduciary relationship with Plaintiffs.

476.     By virtue of her attorney-client relationships, Ms. Haggerty, and Michael Best, knew that Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski owed Plaintiffs a fiduciary duty.

477.     In spite of Ms. Haggerty's and Michael Best's knowledge that the Chula Vista Defendants owed Plaintiffs a fiduciary duty, Ms. Haggerty and Michael Best assisted the Chula Vista Defendants in breaching their fiduciary duty by helping them wrongfully convert Plaintiffs' condominium units into profit-generating vessels for the sole benefit of the Chula Vista Defendants, through use of The Club.

478.     Michael Best and Ms. Haggerty's aiding and abetting the Chula Vista Defendants' breaches of fiduciary duty continues as of the filing of this Complaint.

479.     As a direct and proximate result of one or more of the above wrongful acts, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income and declining property values.

## COUNT XXIII

## (Aiding and Abetting Conversion – Nancy Haggerty, Esq.)

480.     Plaintiffs incorporate by reference and re-allege paragraphs 1 through 479 as if fully set forth herein.

481. At all relevant times, Michael Best, including partner Nancy Haggerty, Esq., acted as legal counsel to the Chula Vista Defendants, performing legal services necessary to complete the sale of the condominium units and the execution of the RMA with Plaintiffs.

482. Michael Best partner Nancy Haggerty also served as counsel to the Association and its members during Association meetings.

483. By virtue of her representation of the Association, Ms. Haggerty was therefore also counsel to each of the members of the Association, including Plaintiffs and the Class.

484. Each member of the Association was an intended third-party beneficiary of Ms. Haggerty's representation of the Association.

485. Ms. Haggerty had a conflict of interest by wearing multiple hats while her clients had competing economic interests relative to The Club.

486. On information and belief, Plaintiffs contend that Ms. Haggerty also advised Chula Vista during the creation and implementation of The Club program.

487. On numerous occasions, certain owners objected to Chula Vista allowing The Club to convert their property rights, while further allowing rental of their condominium units at reduced rates. Owners also demanded an accounting of The Club, along with full disclosure to all Association members of The Club's impact upon their property rights, rental income, and the value of their condominium units, given the legacy duration of Club memberships that lasted upwards of twenty years.

488. Despite these objections to The Club program and the financially devastating effect that Club memberships caused to their investment, Ms. Haggerty rebuffed the owners' repeated demands.

489. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

490. By putting off these objections, Ms. Haggerty consciously desired for Chula Vista to continue receiving revenue from Club memberships while wrongfully misappropriating Association members' property and rental income.

491. Ms. Haggerty assisted the Chula Vista Defendants in their scheme to use The Club as a revenue generator, to the detriment of Plaintiffs.

492. Ms. Haggerty's conflict of interest continued at least until her purported withdrawal as Association counsel on or around November 8, 2016.

493. Michael Best and Ms. Haggerty's aiding and abetting the Chula Vista Defendants' wrongful conversion of Plaintiffs' property continues as of the filing of this Complaint.

494. As a direct and proximate result of one or more of the above wrongful acts, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income and declining property values.

## COUNT XXIV

### (Aiding and Abetting Breach of Fiduciary Duty –
### Nancy Haggerty, Esq.)

495.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 494 as if fully set forth herein.

496.    At all relevant times, Michael Best, including partner Nancy Haggerty, Esq., acted as legal counsel to the Chula Vista Defendants, performing legal services necessary to complete the sale of the condominium units and the execution of the RMA with Plaintiffs.

497.    Michael Best partner Nancy Haggerty also served as counsel to the Association and its members during Association meetings.

498.    By virtue of her representation of the Association, Ms. Haggerty was therefore also counsel to each of the members of the Association, including Plaintiffs and the Class.

499.    Each member of the Association was an intended third-party beneficiary of Ms. Haggerty's representation of the Association.

500.    Ms. Haggerty had a conflict of interest by wearing multiple hats while her clients had competing economic interests relative to The Club.

501.    On information and belief, Plaintiffs contend that Ms. Haggerty also advised Chula Vista during the creation and implementation of The Club program.

502.    On numerous occasions, certain owners objected to Chula Vista allowing The Club to convert their property rights, while further allowing rental of their condominium units at reduced rates. Owners also demanded an accounting of The

Club, along with full disclosure to all Association members of The Club's impact upon their property rights, rental income, and the value of their condominium units, given the legacy duration of Club memberships that lasted upwards of twenty years.

503.   Despite these objections to The Club program and the financially devastating effect The Club memberships caused to their investment, Ms. Haggerty rebuffed the owners' repeated demands.

504.   As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

505.   By putting off these objections, Ms. Haggerty consciously desired for Chula Vista to continue receiving revenue from Club memberships while wrongfully misappropriating Association members' property and rental income.

506.   Ms. Haggerty assisted the Chula Vista Defendants in their scheme to use The Club as a revenue generator, to the detriment of Plaintiffs.

507.   Ms. Haggerty's conflict of interest continued at least until her purported withdrawal as Association counsel on or around November 8, 2016.

508.   By virtue of her attorney-client relationships, Ms. Haggerty, and Michael Best, knew that Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski were engaged in a fiduciary relationship with Plaintiffs.

509.   By virtue of her attorney-client relationships, Ms. Haggerty, and Michael Best, knew that Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski owed Plaintiffs a fiduciary duty.

510.   In spite of Ms. Haggerty's and Michael Best's knowledge that the Chula Vista Defendants owed Plaintiffs a fiduciary duty, Ms. Haggerty and Michael Best assisted the Chula Vista Defendants in breaching their fiduciary duty by helping them wrongfully convert Plaintiffs' condominium units into profit-generating vessels for the sole benefit of the Chula Vista Defendants, through use of The Club.

511.   Michael Best and Ms. Haggerty's aiding and abetting the Chula Vista Defendants' breaches of fiduciary duty continues as of the filing of this Complaint.

512.   As a direct and proximate result of one or more of the above wrongful acts, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income and declining property values.

## COUNT XXV

### (Wisconsin Deceptive Trade Practices Act, Wis. Stat. section 100.18, *et seq.* – Chula Vista, Inc.)

513.   Plaintiffs incorporate by reference and re-allege paragraphs 1 through 512 as if fully set forth herein.

514.   Chula Vista, Inc. operates The Club at Chula Vista, both individually and in conjunction with CVR Management, LLC.

515.   Chula Vista, Inc., through its employees and/or agents, made false representations that The Club memberships have little or no effect on the value of Plaintiffs' property and rental income.  Specifically, Chula Vista, Inc. has never disclosed to the condominium unit owners that The Club's product, namely the memberships offered to the public, included—as an element of consideration—rental

discounts to the rental inventory days that belonged solely to the condominium unit owners. Further, Chula Vista, Inc. did not reveal that, while The Club was allowed to monetize and retain a property right belonging to the condominium unit owners, that the cost of the room discount ranging between 20% to 80% off the normal room rental rate was being passed along by The Club to the condominium association members.

516. Instead of disclosing to the condominium unit owners that The Club was monetizing and retaining a portion of the condominium unit owners' property, Chula Vista, Inc. through its employees and/or agents, advised condominium unit owners, including Plaintiffs that The Club was a "marketing program" and that any fees merely paid for the cost of advertising and marketing to Club members to get them in the door.

517. Chula Vista, Inc. made these statements condominium unit owners, including Plaintiffs, knowing them to be false.

518. Chula Vista Inc. made these statements to condominium unit owners, including Plaintiffs, with the intent to deceive and defraud Plaintiffs of their property and rental income.

519. Chula Vista, Inc. made these statements to induce sales of products and/or services, and continues to make them to induce continued sales and/or services.

520. As a result of its false representations, Chula Vista, Inc. gained additional revenue in the form of Club sales by effectively monetizing a fractional portion of Plaintiffs' property rights.

521. Plaintiffs have been deceived and defrauded by Chula Vista, Inc.'s false representations.

522. As the direct and proximate result of Chula Vista, Inc.'s false representations, condominium unit owners, including Plaintiffs, were defrauded by Chula Vista, Inc.

523. Defendant's fraudulent conduct is ongoing as of the filing of this Complaint.

524. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

525. Plaintiffs seek an award of double damages, attorneys' fees, and all costs of investigation and litigation.

## COUNT XXVI

### (Wisconsin Deceptive Trade Practices Act, Wist. Stat. section 100.18, *et seq.* – CVR Management, LLC)

526. Plaintiffs incorporate by reference and re-allege paragraphs 1 through 525 as if fully set forth herein.

527. CVR Management, LLC operates The Club at Chula Vista, both individually and in conjunction with Chula Vista, Inc.

528.     CVR, through its employees and/or agents, made false representations that The Club memberships have little or no effect on the value of Plaintiffs' property and rental income.  Specifically, CVR has never disclosed to the condominium unit owners that The Club's product, namely the memberships offered to the public, included—as an element of consideration—rental discounts to the rental inventory days that belonged solely to the condominium unit owners.  Further, CVR did not reveal that, while The Club was allowed to monetize and retain a property right belonging to the condominium unit owners, that the cost of the room discount ranging between 20% to 80% off the normal room rental rate was being passed along by The Club to the condominium association members.

529.     Instead of disclosing to the condominium unit owners that The Club was monetizing and retaining a portion of the condominium unit owners' property, CVR through its employees and/or agents, advised condominium unit owners, including Plaintiffs that The Club was a "marketing program" and that any fees merely paid for the cost of advertising and marketing to Club members to get them in the door.

530.     CVR made these statements condominium unit owners, including Plaintiffs, knowing them to be false.

531.     CVR made these statements to condominium unit owners, including Plaintiffs, with the intent to deceive and defraud Plaintiffs of their property and rental income.

532.     CVR made these statements to induce sales of products and/or services, and continues to make them to induce continued sales and/or services.

533.     As a result of its false representations, CVR gained additional revenue in the form of Club sales by effectively monetizing a fractional portion of Plaintiffs' property rights.

534.     Plaintiffs have been deceived and defrauded by CVR's false representations.

535.     As the direct and proximate result of CVR's false representations, condominium unit owners, including Plaintiffs, were defrauded by CVR.

536.     Defendant's fraudulent conduct is ongoing as of the filing of this Complaint.

537.     As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

538.     As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

539.     Plaintiffs seek an award of double damages, attorneys' fees, and all costs of investigation and litigation.

## COUNT XXVII

### (Wisconsin Deceptive Trade Practices Act, Wis. Stat. section 100.18, *et seq.* – Michael Kaminski)

540.     Plaintiffs incorporate by reference and re-allege paragraphs 1 through 539 as if fully set forth herein.

541.    Michael Kaminski is the majority owner and Chief Executive Officer of Chula Vista, including Chula Vista, Inc. and CVR Management, LLC. In that capacity, he operates The Club at Chula Vista, both individually and in conjunction with Chula Vista, Inc. and CVR Management, LLC.

542.    In addition, Michael Kaminski owns and/or operates multiple other businesses and business interests in and around Chula Vista, including but not limited to, a golf course, indoor and outdoor waterparks, restaurants including "Kaminski's Trademark Chop House" and the "Kilbourn City Grill," a spa called the "Spa del Sol," sports facilities, roller coasters, and other various attractions and recreational enterprises.

543.    Michael Kaminski, personally and in his capacity as Chief Executive of Chula Vista, Inc., CVR Management, LLC, and The Club at Chula Vista, made false representations that The Club memberships have little or no effect on the value of Plaintiffs' property and rental income.  Specifically, Michael Kaminski has never disclosed to the condominium unit owners that The Club's product, namely the memberships offered to the public, included—as an element of consideration—rental discounts to the rental inventory days that belonged solely to the condominium unit owners.  Further, Michael Kaminski did not reveal that, while The Club was allowed to monetize and retain a property right belonging to the condominium unit owners, that the cost of the room discount ranging between 20% to 80% off the normal room rental rate was being passed along by The Club to the condominium association members.

544. Instead of disclosing to the condominium unit owners that The Club was monetizing and retaining a portion of the condominium unit owners' property, Michael Kaminski, advised condominium unit owners, including Plaintiffs that The Club was a "marketing program" and that any fees merely paid for the cost of advertising and marketing to Club members to get them in the door.

545. Michael Kaminski made these statements condominium unit owners, including Plaintiffs, knowing them to be false.

546. Michael Kaminski made these statements to condominium unit owners, including Plaintiffs, with the intent to deceive and defraud Plaintiffs of their property and rental income.

547. Michael Kaminski made these statements to induce sales of products and/or services, and continues to make them to induce continued sales and/or services.

548. Michael Kaminski continues to represent The Club as a marketing program or a "private loyalty program" as of the filing of this Complaint.

549. Michael Kaminski's representations and omissions have been, and continue to be, motivated by his own self-interest, in an effort to lure customers to his personally held business enterprises, including his namesake steakhouse, the Water Parks, golf courses, and spa facilities.

550. As a result of its false representations, Michael Kaminski gained additional revenue for the Chula Vista entities in the form of Club sales by effectively monetizing a fractional portion of Plaintiffs' property rights.

551. Plaintiffs have been deceived and defrauded by Michael Kaminski's false representations.

552. As the direct and proximate result of Michael Kaminski's false representations, condominium unit owners, including Plaintiffs, were defrauded by Michael Kaminski.

553. Defendant's fraudulent conduct is ongoing as of the filing of this Complaint.

554. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

555. Plaintiffs seek an award of double damages, attorneys' fees, and all costs of investigation and litigation.

## COUNT XXVIII

## (Legal Malpractice on behalf of the Chula Vista Condominium Unit Owners Association – Michael Best & Friedrich, LLP)

556. Plaintiffs incorporate by reference and re-allege paragraphs 1 through 555 as if fully set forth herein.

557. As condominium unit owners, Plaintiffs became members of the Chula Vista Condominium Unit Owners Association (the "Association").

558. At all relevant times, Michael Best, including partner Nancy Haggerty, Esq., acted as legal counsel to the Chula Vista Defendants, performing legal services necessary to complete the sale of the condominium units and the execution of the RMA with Plaintiffs.

559. Michael Best partner Nancy Haggerty also served as counsel to the Association and its members during Association meetings.

560. By representing the Association, Ms. Haggerty intended to represent each and every one of its members, including Plaintiffs and the Class.

561. By virtue of her representation of the Association, Ms. Haggerty was therefore also counsel to each of the members of the Association, including Plaintiffs and the Class.

562. Each member of the Association was an intended third-party beneficiary of Ms. Haggerty's representation of the Association.

563. During the course of their attorney-client relationship, Ms. Haggerty communicated directly with Plaintiffs and the Class to provide legal advice and direction.

564. Plaintiffs and the Class believed that Ms. Haggerty, as their attorney, was acting in their best interests.

565. Ms. Haggerty had a conflict of interest by wearing multiple hats while her clients had competing economic interests relative to The Club.

566. On information and belief, Plaintiffs contend that Ms. Haggerty also advised Chula Vista during the creation and implementation of The Club program.

567. During the course of their attorney-client relationship, Plaintiffs and the Class sought legal advice from Ms. Haggerty.

568. On numerous occasions, certain owners objected to Chula Vista allowing The Club to convert their property rights, while further allowing rental of their

condominium units at reduced rates. Owners also demanded an accounting of The Club, along with full disclosure to all Association members of The Club's impact upon their property rights, rental income, and the value of their condominium units, given the legacy duration of Club memberships that lasted upwards of twenty years.

569.    Despite these objections to The Club program and the financially devastating effect The Club memberships caused to their investment, Ms. Haggerty rebuffed the owners' repeated demands, despite also representing them as members of the Association.

570.    As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

571.    By putting off these objections, Ms. Haggerty consciously desired for Chula Vista to continue receiving revenue from Club memberships while wrongfully misappropriating Association members' property and rental income.

572.    Ms. Haggerty assisted the Chula Vista Defendants in their scheme to use The Club as a revenue generator, to the detriment of Plaintiffs.

573.    Ms. Haggerty's conflict of interest continued at least until her purported withdrawal as Association counsel on or around November 8, 2016.

574.    By virtue of her attorney-client relationships, Ms. Haggerty, and Michael Best, knew that Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski were engaged in a fiduciary relationship with Plaintiffs.

575.     By virtue of her attorney-client relationships, Ms. Haggerty, and Michael Best, knew that Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski owed Plaintiffs a fiduciary duty.

576.     In spite of Ms. Haggerty's and Michael Best's knowledge that the Chula Vista Defendants owed Plaintiffs a fiduciary duty, Ms. Haggerty and Michael Best assisted the Chula Vista Defendants in breaching their fiduciary duty by helping them wrongfully convert Plaintiffs' condominium units into profit-generating vessels for the sole benefit of the Chula Vista Defendants, through use of The Club.

577.     Michael Best and Ms. Haggerty's aiding and abetting the Chula Vista Defendants' breaches of fiduciary duty continues as of the filing of this Complaint.

578.     Michael Best and Ms. Haggerty's aiding and abetting the Chula Vista Defendants' breaches of fiduciary duty were wrongful and negligent acts or omissions which caused injury to Plaintiffs and the Class.

579.     Michael Best and Ms. Haggerty's wrongful conduct and dual representation despite a conflict of interest were breaches of the duty owed to Plaintiffs and the Class, who were clients of Michael Best and Ms. Haggerty.

580.     As a direct and proximate result of one or more of the above wrongful acts, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income and declining property values

## COUNT XXIX

## (Legal Malpractice on behalf of the Chula Vista Condominium Unit Owners Association – Nancy Haggerty, Esq.)

581. Plaintiffs incorporate by reference and re-allege paragraphs 1 through 580 as if fully set forth herein.

582. As condominium unit owners, Plaintiffs became members of the Association.

583. At all relevant times, Michael Best, including partner Nancy Haggerty, Esq., acted as legal counsel to the Chula Vista Defendants, performing legal services necessary to complete the sale of the condominium units and the execution of the RMA with Plaintiffs.

584. Michael Best partner Nancy Haggerty also served as counsel to the Association and its members during Association meetings.

585. By representing the Association, Ms. Haggerty intended to represent each and every one of its members, including Plaintiffs and the Class.

586. By virtue of her representation of the Association, Ms. Haggerty was therefore also counsel to each of the members of the Association, including Plaintiffs and the Class.

587. Each member of the Association was an intended third-party beneficiary of Ms. Haggerty's representation of the Association.

588. During the course of their attorney-client relationship, Ms. Haggerty communicated directly with Plaintiffs and the Class to provide legal advice and direction.

589. Plaintiffs and the Class believed that Ms. Haggerty, as their attorney, was acting in their best interests.

590. Ms. Haggerty had a conflict of interest by wearing multiple hats while her clients had competing economic interests relative to The Club.

591. On information and belief, Plaintiffs contend that Ms. Haggerty also advised Chula Vista during the creation and implementation of The Club program.

592. During the course of their attorney-client relationship, Plaintiffs and the Class sought legal advice from Ms. Haggerty.

593. On numerous occasions, certain owners objected to Chula Vista allowing The Club to convert their property rights, while further allowing rental of their condominium units at reduced rates. Owners also demanded an accounting of The Club, along with full disclosure to all Association members of The Club's impact upon their property rights, rental income, and the value of their condominium units, given the legacy duration of Club memberships that lasted upwards of twenty years.

594. Despite these objections to The Club program and the financially devastating effect The Club memberships caused to their investment, Ms. Haggerty rebuffed the owners' repeated demands, despite also representing them as members of the Association.

595. As of the filing of this Complaint, and due to Defendants' concealment, Plaintiffs do not have full and objective notice or knowledge of the extent of the financial damage and harm caused by Defendants and The Club.

596. By putting off these objections, Ms. Haggerty consciously desired for Chula Vista to continue receiving revenue from Club memberships while wrongfully misappropriating Association members' property and rental income.

597. Ms. Haggerty assisted the Chula Vista Defendants in their scheme to use The Club as a revenue generator, to the detriment of Plaintiffs.

598. Ms. Haggerty's conflict of interest continued at least until her purported withdrawal as Association counsel on or around November 8, 2016.

599. By virtue of her attorney-client relationships, Ms. Haggerty, and Michael Best, knew that Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski were engaged in a fiduciary relationship with Plaintiffs.

600. By virtue of her attorney-client relationships, Ms. Haggerty, and Michael Best, knew that Chula Vista, Inc., CVR Management, LLC, and Michael Kaminski owed Plaintiffs a fiduciary duty.

601. In spite of Ms. Haggerty's and Michael Best's knowledge that the Chula Vista Defendants owed Plaintiffs a fiduciary duty, Ms. Haggerty and Michael Best assisted the Chula Vista Defendants in breaching their fiduciary duty by helping them wrongfully convert Plaintiffs' condominium units into profit-generating vessels for the sole benefit of the Chula Vista Defendants, through use of The Club.

602. Michael Best and Ms. Haggerty's aiding and abetting the Chula Vista Defendants' breaches of fiduciary duty continues as of the filing of this Complaint.

603.    Michael Best and Ms. Haggerty's aiding and abetting the Chula Vista Defendants' breaches of fiduciary duty were wrongful and negligent acts or omissions which caused injury to Plaintiffs and the Class.

604.    Michael Best and Ms. Haggerty's wrongful conduct and dual representation despite a conflict of interest were breaches of the duty owed to Plaintiffs and the Class, who were clients of Michael Best and Ms. Haggerty.

605.    As a direct and proximate result of one or more of the above wrongful acts, Defendants have already caused and will continue to cause Plaintiffs significant damage in the form of past and future lost net rental income and declining property values.

## COUNT XXX

## (Unconscionable Contract of Adhesion – CVR Management, LLC)

606.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 605 as if fully set forth herein.

607.    CVR Management, LLC operates The Club at Chula Vista, both individually and in conjunction with Chula Vista, Inc. and Michael Kaminski.

608.    CVR Management, LLC operates and oversees the rental management program at Chula Vista.

609.    As detailed above, CVR Management sent Plaintiffs and the class a new RMA, to purportedly govern the rental management program at Chula Vista effective November 16, 2018.

610.    As overseer and operator of the rental management program at Chula Vista, CVR Management, LLC enjoys bargaining power that is far superior to any condominium unit owner.

611.    The proposed new RMA is non-negotiable – it was presented to the condominium unit owners on a "take it or leave it" basis with no opportunity for negotiation.

612.    The condominium unit owners have no practical choice but to adhere to the new RMA or reject it.

613.    As laid out in detail above, the proposed new RMA contains several provisions that severely damage the condominium unit owners' legal rights, now, in the past, and in the future.

614.    Most troublingly, the proposed new RMA seeks to force Plaintiffs' and the Class to release important legal rights—including rights related to their claims in this case—with no consideration in return.

615.    The proposed new RMA is one-sided in nature, unreasonable, harsh, overreaching, and oppressive to the owners, including Plaintiffs and the Class.

616.    The proposed new RMA is an unconscionable contract of adhesion, foisted upon Plaintiffs and the Class by CVR Management, LLC in bad faith.

617.    At its core, the proposed new RMA is designed to cover up past misconduct on behalf of the Chula Vista Defendants, and to further enable such misconduct to continue into the future.

618. If CVR Management, LLC is allowed to implement the proposed new RMA, Plaintiffs and the class will not only suffer further and significant damage in the form of future lost net rental income and declining property values, their claims in this case will be prejudiced and they will suffer irreversible harm.

## **PRAYER FOR RELIEF**

WHEREFORE, the named Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

(a) For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Tony Edwards, Kenneth Riche, Joseph Sartin, Robert Silberman, and Scott Willock as the representative of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

(b) Issue an order for the following injunctive relief:

    i. Suspending the sale of new memberships in The Club at Chula Vista;

    ii. Suspending the rental of condominium units at Chula Vista Resort at discounted rates to members of The Club at Chula Vista;

    iii. Suspending the collection of Water Park assessments or amenity fees in any form from Plaintiffs and the Class by the Chula Vista Defendants;

    iv. Enjoining implementation of the revised Rental Management Agreement which has an effective date of November 16, 2018 (the "2018 RMA"); and

    v. Rescinding all 2018 RMAs that have already been signed.

(c) For an Order declaring that Defendants' conduct violates the common law provisions referenced herein;

(d)     For an Order declaring that Defendants' conduct violates the statutory provisions referenced herein;

(e)     For an Order finding in favor of Plaintiffs and the Class on all counts alleged herein;

(f)     For compensatory and punitive damages in amounts that are fair, just and reasonable, to be determined by the Court and/or at trial;

(g)     For double and/or treble damages as provided by Wisconsin law, in an amount to be determined by the Court and/or at trial;

(h)     For disgorgement of ill-gotten gains obtained by Defendants through their wrongful conduct;

(i)     For pre-judgment interest on all amounts awarded to the full extent allowed by law;

(j)     For costs of suit pursuant to Wisconsin statutory and common law;

(k)     For reasonable attorneys' fees pursuant to Wisconsin statutory and common law;

(l)     For injunctive relief as pleaded or as the Court may deem proper; and

(m)     For all other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

November 30, 2018                    Respectfully submitted,


                                    By:     Steven A. Hart
                                            Attorney   for   Plaintiffs
                                            and the Class

Steven A. Hart
Brian Eldridge
**HART MCLAUGHLIN & ELDRIDGE, LLC**
22 W. Washington St., Suite 1600
Chicago, IL 60602
312.955.0545
shart@hmelegal.com
beldridge@hmelegal.com