# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOSEPH SARTIN, et al.,**

        **Plaintiffs,**

      **v.**                                                  **Case No. 18-CV-1890**

**CHULA VISTA, INC., et al.,**

        **Defendants.**

# ORDER DENYING PLAINTIFFS' MOTION
# FOR PRELIMINARY INJUNCTION

**1. Background**

Chula Vista, Inc. operates the Chula Vista Resort and Waterpark in the Wisconsin Dells. The plaintiffs own condominium units at the resort, which they purchased with the expectation that they could earn income by renting the condominiums to resort visitors. The plaintiffs entered into a rental management agreement with CVR Management, LLC, an affiliate of Chula Vista, Inc., whereby CVR would manage the units in exchange for 40 percent of the rental income.

Subsequent to the plaintiffs' purchasing their condominiums, in 2009 Chula Vista created a program called "The Club" whereby members of the public, in exchange for a

$10,000 initiation fee and annual dues, would receive a variety of benefits, including up to 80 percent off condominium rentals. The plaintiffs allege they were injured by this program because Chula Vista alone retained the fees from The Club. As a result, when the plaintiffs rented their unit to a club member, they received 60 percent of a deeply discounted rate. This not only diminished their income from the rental of their condominium units but decreased the resale value of their units, which is tied to the unit's income potential.

The plaintiffs retained counsel, who began communicating with Chula Vista in anticipation of litigation. In a June 11, 2018 certified letter to the defendants, plaintiffs' counsel alleged that

> through its use of The Club at Chula Vista Resorts, CVR Management and its members unlawfully converted the Chula Vista Condominium units for their own financial gain, by renting out condominium units at discounted rates without sharing Club fees with the owners. In doing so, CVR Management and its members acted in bad faith and did not use best efforts to maximize the owners' rental income, in violation of the Rental Management Agreement.

(ECF No. 4-3 at 1.)

A few months later, in October of 2018, Chula Vista sent all condominium owners a new rental management agreement that would take effect in November of 2018. The new agreement, which is single-spaced and stretches into 20 pages, included the following new provision:

> (r) <u>Club</u>. Owner is aware that the manner in which guests are procured for nightly stays has changed dramatically from the time the Unit was created, with travel agents charging straight commissions, conference planners and sports promoters are filling rooms with different systems, online travel agencies are charging pre-deducts, online travel agencies, affiliated and unaffiliated home rental booking sites have all expanded rapidly, and new programs with differing commission rates and methods are constantly being introduced. Owner is aware that Operator has formed a private loyalty club, ("Club") intended to operate similarly to a branded hotel loyalty club, in order to drive repeat business to the Resort and to the rental management program, which has been operating for years, and Owner has received Net Room Revenue for years, from stays by Club members. The purpose of the Club is to produce more nightly stays, including more nightly stays in the Unit. To the extent that the Owner was a party to a prior Rental Management Agreement, Owner acknowledges that Owner has been aware of, and consented to, the rental of the Unit through the Club program, at Club rates, since the creation of the Club, and that any charges paid by Club members to join the Club were in the nature of commissions, and not included in Net Room Revenue, or for discounts at other Hotels, Resorts, Resort amenities, including restaurants, waterparks, golf, shopping, impulse purchases, etc. Owner acknowledges that this statement is intended to clarify the intent of prior Rental Management Agreements, as it relates to the Club program, to classify these membership fees as commissions and discounts for other Hotels, Resorts, Resort facilities, and not Net Room Revenue.

(ECF No. 4-4 at 9.) In effect, as a condition of having CVR continue to manage their units, the defendants required all condominium owners to acknowledge that they had consented to The Club, the resulting diminished rental income, and to Chula Vista keeping all of the revenue from The Club.

The plaintiffs refused to sign the new management agreement and filed this action as a proposed class action on behalf of all Chula Vista condominium owners. They seek a preliminary injunction enjoining the implementation of the 2018

3

management agreement. The plaintiffs further "request an order rescinding all 2018 RMAs that have already been signed by condominium owners." (ECF No. 4 at 11.) Alternatively, the plaintiffs ask the court to strike or void the waivers quoted above. (ECF No. 4 at 11.)

The defendants responded to the plaintiffs' motion for a preliminary injunction (ECF No. 9) and the plaintiffs replied (ECF No. 28). The defendants seek to file a sur-reply. (ECF No. 34.) The court grants that motion. The court received oral argument from the parties at a telephonic hearing on March 14, 2019. (ECF No. 35.)

Subsequent to the plaintiffs filing this action the defendants sent an amended 2018 rental management agreement to all condominium owners except the five plaintiffs. (ECF No. 28 at 3.) This amended rental management agreement deletes the following provision, which is included in the language quoted above:

> To the extent that the Owner was a party to a prior Rental Management Agreement, Owner acknowledges that Owner has been aware of, and consented to, the rental of the Unit through the Club program, at Club rates, since the creation of the Club, and that any charges paid by Club members to join the Club were in the nature of commissions, and not included in Net Room Revenue, or for discounts at other Hotels, Resorts, Resort amenities, including restaurants, waterparks, golf, shopping, impulse purchases, etc.

(ECF No. 28-1 at 2.) The amended agreement replaces it with the following:

> To the extent that the Owner was a party to a prior Rental Management Agreement, consents to, the rental of the Unit through the Club program, at Club rates, and that any charges paid by Club members to join the Club were in the nature of commissions, and not included in Net Room

4

Revenue, or for discounts at other Hotels, Resorts, Resort amenities, including restaurants, waterparks, golf, shopping, impulse purchases, etc.

(ECF No. 28-1 at 2.) Although the amendment deletes the provision stating that the condominium owners were aware of and consented to The Club, it maintains the retroactive concession that Club charges were commissions and not "Net Room Revenue." Thus, if the plaintiffs signed the amended 2018 rental management agreement, they would seem to concede a claim central to this action.

**2. Standard for a Preliminary Injunction**

"A preliminary injunction is an extraordinary remedy and is never awarded as of right." *D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017) (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008)). The power to grant a preliminary injunction is one that is "never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council*, 549 F.3d at 1085 (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984)).

The party seeking a preliminary injunction must demonstrate: "(1) that he will suffer irreparable harm absent preliminary injunctive relief during the pendency of his action; (2) inadequate remedies at law exist; and (3) he has a reasonable likelihood of success on the merits." *Whitaker*, 858 F.3d at 1044. "If the movant successfully makes this showing, the court must engage in a balancing analysis, to determine whether the

5

balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Id.* As part of the second phase the court attempts "to minimize the cost of potential error" by weighing "the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council*, 549 F.3d at 1086. This involves a sliding scale: "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Girl Scouts of Manitou Council*, 549 F.3d at 1086 (quoting *Roland Mach. Co*, 749 F.2d at 387). "Taking into account all these considerations, the district court must exercise its discretion 'to arrive at a decision based on a subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case.'" *Girl Scouts of Manitou Council*, 549 F.3d at 1086 (quoting *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1436 (7th Cir. 1986)).

3. **Analysis**

There appears to be no dispute that the defendants are intentionally attempting to quash the plaintiffs' (and potential class members') nascent claims. The challenged waiver provision serves no other purpose and is not associated with any consideration beyond merely continuing to manage the properties as they had in the past.

There also does not appear to be any dispute that CVR was permitted to terminate the prior rental management agreement as it did. The parties also agree that the defendants are under no obligation to manage the rental of the condominium units, nor are the owners required to use CVR to manage the rental of their condominium units. Owners are free to manage and rent their units on their own or contract with another management company, as some of the plaintiffs have now done. However, for a variety of reasons, units managed by a firm other than CVR would be at a significant disadvantage in competing for renters when compared to the units managed by CVR.

The plaintiffs have failed to demonstrate that they have standing to seek a preliminary injunction against enforcement of the waiver provisions of the 2018 rental management agreement. No plaintiff has signed the agreement and the window for doing so has closed. Thus, the plaintiffs will not be bound by the waiver provision the enforcement of which they seek to enjoin. Although the plaintiffs seek to represent the interest of all condominium owners as class representatives (including those who have signed the waiver), no motion for class certification has been filed, much less has the court certified a class.

Beyond that significant shortcoming, that plaintiffs have failed to show that they are likely to suffer irreparable harm absent a preliminary injunction. "A harm is 'irreparable' if it 'cannot be prevented or fully rectified by the final judgment after trial.'" *Girl Scouts of Manitou Council*, 549 F.3d at 1089 (quoting *Roland Mach. Co*, 749 F.2d

at 386). The plaintiffs argue that the loss of rental income may result in them having to sell their condominiums. (ECF Nos. 4 at 13; 28 at 10.) But they have not offered any evidence of the likelihood of that occurring. Moreover, any such loss seemingly would be compensable in money damages.

The plaintiffs offer largely the same argument in an attempt to show that they lack an adequate remedy at law. They argue, "if the condominium unit owners get upside down on their investments, or have to declare bankruptcy, or suffer harm to their credit profile, that is the definition of harm that 'cannot be prevented or fully rectified by the final judgment after trial.'" (ECF No. 28 at 11 (quoting *Roland Machinery Co.*, 749 F.2d at 386.) However, no plaintiff has presented evidence that he is actually facing bankruptcy or harm to his credit profile as a result of not having CVR manage his property. In fact, the court was informed at oral argument that one plaintiff was financially able to forego rental income and therefore, unlike the other plaintiffs, had not entered into a management agreement with an outside company.

The court disagrees that the plaintiffs lack an adequate remedy at law. Lost income is a frequent concern for litigants during a lawsuit, whether it is an accident victim who cannot work or a vendor demanding payment on an invoice. Same, too, with respect to the plaintiffs' concerns about being able to adequately prove consequential damages. Yet a preliminary injunction remains an extraordinary remedy. To the extent they may have been injured by any allegedly unlawful action of the

defendants, the plaintiffs have failed to show how damages at the conclusion of this case would be insufficient to provide redress.

**IT IS THEREFORE ORDERED** that the defendants' motion to file a sur-reply (ECF No. 34) is **granted**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for a preliminary injunction (ECF No. 3) is **denied**.

Dated at Milwaukee, Wisconsin this 22nd day of March, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge