# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOSEPH SARTIN, et al.,

                  **Plaintiffs,**

        **v.**                            **Case No. 18-CV-1890**

CHULA VISTA, INC., et al.,

                  **Defendants.**

# DECISION AND ORDER

### 1. Facts and Procedural History

The Chula Vista Resort & Waterpark is a resort in Wisconsin Dells comprised of a hotel, condominium residences, a golf course, and indoor and outdoor waterparks. (ECF No. 144-1, ¶ 1-2.) It is owned by Chula Vista, Inc., of which Mike Kaminski is the chairman and CEO. (ECF No. 144-1, ¶¶ 1, 4.)

Plaintiffs Kenneth Riche, Robert Silberman, and Tony Edwards all owned condominiums at the resort during the alleged class period. (ECF No. 151, ¶ 1.) Riche and Silberman have since sold their units. (ECF No. 144-1, ¶¶ 20, 25.) The defendants' proposed findings of fact do not state whether Edwards still owns a unit. He is referenced in the proposed findings of fact only to say that he "is an experienced real

estate investor, having owned hundreds of properties over his career." (ECF No. 144-1, ¶ 5.) Plaintiffs Joseph Sartin and Scott Willock never personally owned any unit. (ECF No. 144-1, ¶¶ 9, 14.[1]) Rather, they were members of Abbsandra 2622, LLC, which previously owned a unit. (ECF No. 144-1, ¶¶ 8, 10). Abbsandra 2622, LLC is not a party to this action.

Owners of condominium units within the resort may participate in a rental program operated by CVR Management, LLC. (ECF No. 144-1, ¶¶ 3, 67.) Abbsandra LLC as well as Riche, Silberman, and Edwards entered into to a rental management agreement with CVR regarding the rental of their condominiums. (ECF No. 144-1, ¶ 80.) Under the rental management agreement between condominium owners and CVR, CVR had sole discretion to set rental rates. (ECF No. 144-1, ¶¶ 71, 74[2].)

At the heart of this litigation is "The Club," which Chula Vista created in 2009 and announced at that year's meeting of condominium owners. (ECF No. 144-1, ¶ 83.)

---

[1] The plaintiffs responded to this and many other proposed findings of fact with simply, "Denied," as if they were answering allegations in a complaint. But this court's local rules require that, in responding to a movant's proposed findings of fact in support of a motion for summary judgment, the party opposing the motion must provide "a concise response to the moving party's statement of facts that must contain … reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon …." Civ. L.R. 56(b)(2)(B). Having failed to comply with this court's local rules by not providing "specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon" for their denial of the proposed finding of fact, in accordance with Fed. R. Civ. P. 56(e)(2) each "Denied" proposed finding of fact is deemed undisputed for purposes of the motion.

[2] The defendants' proposed findings of fact conflict as to who had the discretion to set the rental rates. Paragraph 71 states that rates are set by CVR, whereas paragraph 74 states that rates are set by Chula Vista. The rental management agreement states that rates are set by "the Operator," which is defined as CVR. (ECF No. 1-1 at 1.)

The Club charged members a membership fee of between $5,000 and $10,000, which was paid to Chula Vista. (ECF No. 151, ¶ 6.) In exchange, Club members received discounts on condominium rentals (ECF Nos. 144-1, ¶ 61; 151, ¶ 8) as well as on hotel rooms (ECF No. 144-1, ¶ 59), food, beverages, spa services, golf, and resort merchandise (ECF No. 144-1, ¶ 58). Chula Vista retained all Club membership fees. (ECF No. 151, ¶ 14.)

The plaintiffs' claim is, in effect, that The Club deprived them of rental income they otherwise would have received. In their view, they suffered the costs of The Club (in the form of discounts on condominium rentals) without enjoying any share of the benefits (the membership fees).

The plaintiffs filed this proposed class action complaint on November 30, 2018 (ECF No. 1) and sought a preliminary injunction enjoining the implementation of a new rental management agreement (ECF No. 3). The complaint includes, in relevant part, claims for conversion (ECF No. 1, ¶¶ 124-73), theft by fraud (ECF No. 1, ¶¶ 174-215), constructive fraud (ECF No. 1, ¶¶ 216-61), breach of fiduciary duty (ECF No. 1, ¶¶ 316-42), negligent misrepresentation (ECF No. 1, ¶¶ 343-86), and intentional misrepresentation (ECF No. 1, ¶¶ 400-45). The complaint also includes a claim for an "unconscionable contract of adhesion" (ECF No. 1, ¶¶ 606-18), which relates to the 2018 rental management agreement.

Following all parties consenting to the full jurisdiction of this court (ECF Nos. 13, 14, 18), the court held a hearing on the plaintiffs' motion for a preliminary injunction (ECF No. 35). On March 22, 2019, the court denied the motion. (ECF No. 36); *Sartin v. Chula Vista, Inc.*, No. 18-CV-1890, 2019 U.S. Dist. LEXIS 47570 (E.D. Wis. Mar. 22, 2019). The court subsequently granted in part and denied in part the defendants' motion for judgment on the pleadings. (ECF No. 48); *Sartin v. Chula Vista, Inc.*, No. 18-CV-1890, 2019 U.S. Dist. LEXIS 109537 (E.D. Wis. July 1, 2019). The court dismissed the plaintiffs' claim under the Wisconsin Deceptive Trade Practices Act but denied the motion on all other grounds. *Sartin*, 2019 U.S. Dist. LEXIS 109537, at *20.

Currently before the court are numerous motions. The defendants seek summary judgment (ECF No. 98) and to exclude the plaintiffs' expert (ECF No. 103). The plaintiffs seek to exclude the defendants' experts (ECF Nos. 109; 128; 129) and to certify a class (ECF No. 110). The parties also filed motions seeking to restrict access to numerous documents. (ECF Nos. 122; 134; 142; 148; 155.)

## 2. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248

(1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

### 3. Parties

The defendants argue that Kaminski is not a proper defendant and Sartin and Willock are not proper plaintiffs.

Kaminski is the Chairman and CEO of Chula Vista. (ECF No. 144-1, ¶ 4.[3]) The plaintiffs point to Wis. Stat. § 183.0304(1), which states that "a member or manager may become personally liable by his or her acts or conduct other than as a member or manager." However, they have not presented evidence that, with respect to his allegedly unlawful conduct, Kaminski was acting other than as the chairman and CEO of Chula Vista. (*See* ECF No. 144 at 24-25.) Consequently, Kaminski is entitled to

---

[3] In their response the plaintiffs assert that "Mr. Kaminski is the owner and operator of Chula Vista and CVR Management, LLC, and several other concerns at the Chula Vista resort." (ECF No. 144 at 24.) But the proposed finding of fact they cite to support this assertion states only, "Mike Kaminski is Chairman and CEO of Chula Vista." (ECF No. 144-1 at 4.) The plaintiffs have not established that Kaminski was an owner or shareholder of Chula Vista or had any role in CVR. Therefore, although the arguments appear immaterial, the court disregards any argument that rests on Kaminski's alleged role as an owner or shareholder of Chula Vista or having any role in CVR.

summary judgment on all claims asserted against him, and he will be dismissed as a defendant.

As for Sartin and Willock, it is undisputed that neither personally owned a condominium unit. (ECF No. 144-1, ¶¶ 9, 14.) Rather, they were members of an LLC that owned a unit. (ECF No. 144-1, ¶¶ 8, 9, 14, 15.) They nonetheless argue that they are proper plaintiffs because "[a]ny losses or harm related to their Chula Vista condominium unit would flow through to Mr. Sartin and Mr. Willock, the only two members of the LLC." (ECF No. 144 at 25.) They also note that they were taxed like a partnership. (ECF No. 144 at 25.)

In an effort to support their standing, Sartin and Willock point to *Marx v. Morris*, 2019 WI 34, 386 Wis. 2d 122, 925 N.W.2d 112. But *Marx* dealt with an LLC member's standing to bring a claim against another member of that LLC. *Marx*, 2019 WI 34, ¶ 40. It has no applicability to the issue here—a member's ability to assert against a third-party a claim of the LLC.

Sartin and Willock also assert that they personally signed the rental management agreement. (ECF No. 144 at 25 (citing ECF No. 151, ¶ 12).) But it was only as members of the LLC that they could have signed the rental management agreement. Again, it was the LLC that owned the condominium and not Sartin and Willock personally; Sartin and Willock could not have authorized the rental of property they did not own. The fact that they were taxed as a partnership is inconsequential, as this is routine for any LLC.

The benefit of limited liability that members of an LLC enjoy comes with the cost of members giving up the right to individually pursue claims of the LLC. If a person wants to be able to sue in his individual capacity, he must likewise be subject to being sued in his individual capacity. Having chosen to own the condominium unit through an LLC, Sartin and Willock do not have standing to assert the claims presented in this action. *See* Wis. Stat. § 183.0305 ("A member of a limited liability company is not a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company ....") Therefore, the court will dismiss them as plaintiffs.

### 4. Civil Conversion

The defendants argue that the plaintiffs' civil conversion claims (Counts 1 and 2) fail as a matter of law because the plaintiffs did not have an ownership interest in any property allegedly converted. (ECF No. 125-1 at 20.) Failure to pay money owed under a contract does not give rise to a claim for conversion. (ECF No. 125-1 at 20 (discussing *Kentuckiana Healthcare, Inc. v. Fourth St. Solutions*, *LLC*, 517 F.3d 446, 447 (7th Cir. 2008)).) And, in any event, the contract (the rental management agreement) gave the defendants discretion to set the rental rates. (ECF No. 125-1 at 20-21.) The defendants' collection of fees from The Club cannot support a claim for conversion because the plaintiffs never had an ownership interest in those fees. (ECF No. 125-1 at 21.) Finally, there could not

have been any conversion because there were no funds to convert; the costs to run The Club exceeded the fees it generated. (ECF No. 125-1 at 21.)

In the plaintiffs' view, by collecting fees and in turn renting their condominium units at discounted rates, the defendants engaged in conversion. (ECF No. 144 at 17.) They argue, "[W]hile there is nothing wrong with Chula Vista having an interest in driving traffic to the resort or for that matter, in making money, the way Chula Vista did so was by using the Class Members' property. That is conversion." (ECF No. 144 at 4, 17-18.)

"Conversion is the intentional, unauthorized control of another's chattel so as to interfere with the owner's possessory rights." *Midwestern Helicopter, LLC v. Coolbaugh*, 2013 WI App 126, ¶9, 351 Wis. 2d 211, 217, 839 N.W.2d 167, 170.; *see also Mgmt. Comput. Servs. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 188, 557 N.W.2d 67, 79 (1996) (defining conversion as "the wrongful exercise of dominion or control over a chattel") (quoting *Production Credit Ass'n v. Nowatzski*, 90 Wis. 2d 344, 353-54, 280 N.W.2d 118 (1979)); *Adams v. Maxcy*, 214 Wis. 240, 245, 252 N.W. 598, 600 (1934) ("Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time."). "A person is liable for conversion when he or she (1) intentionally controls or

takes property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the owner's rights to possess the property." *Midwestern Helicopter*, 2013 WI App 126, ¶9.

Conversion is "a fascinating tort … highly technical in its rules and complications, perhaps more so than any other except defamation, it almost defies definition." *Prod. Credit Asso. v. Equity Coop Livestock Sales Asso.*, 82 Wis. 2d 5, 10, 261 N.W.2d 127, 129 (1978) (quoting Prosser, Law of Torts, 79 (4th ed. 1971)). Despite its complicated and technical nature and the fact that it may be committed in a wide variety of ways, *see id.*; Restatement (Second) of Torts, § 223 (1965), the plaintiffs never articulate the specific nature of their conversion claim. Nor do they point to any authority recognizing a claim for conversion under similar circumstances. In fact, the plaintiffs do not even articulate what property the defendants allegedly converted. They variably imply the defendants converted the membership fees for The Club, the rental income, or maybe even the condominium units themselves. (ECF No. 144 at 17-18.) Whatever their theory, they have failed to present evidence that could sustain their claims.

The plaintiffs do not advance any theory as to how they may have had a possessory interest in The Club membership fees. Members paid fees to Chula Vista pursuant to a membership agreement to which the plaintiffs were not parties. The plaintiffs never owned the membership fees and, consequently, those fees could not

support the plaintiffs' claim of conversion. *See Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 494 (7th Cir. 2019). Any claim that it was simply unfair for Chula Vista to retain membership fees suggests a claim of unjust enrichment rather than conversion. *Cf. Mgmt. Comput. Servs.*, 206 Wis. 2d at 188, 557 N.W.2d at 79 (distinguishing conversion and unjust enrichment). The parties mention unjust enrichment in their briefs (ECF Nos. 125-1 at 24; 144 at 21), but no such claim is included in the complaint, and the plaintiffs do not seek to constructively amend their complaint now. Thus, the court does not further consider an unjust enrichment claim.

The plaintiffs arguably had a possessory interest in rental income, but only after their units were rented, and only then in the proportion set forth in the rental management agreement. There is no allegation that the defendants withheld from the plaintiffs the proportion of rental income allotted to them under the rental management agreement.

Insofar as the plaintiffs may be alleging a possessory interest in the difference between the discounted rate that members of The Club paid and the rate they otherwise would have paid, that theory cannot sustain a claim for conversion because it is undisputed that the rental management agreement gave CVR sole discretion to set rental rates. An allegation that the discounts to members of The Club were inconsistent with the rental management agreement may support a claim for breach of contract (or for breaches of the duties inherent under a contract) but such a claim is distinct from

conversion, *cf. Kentuckiana Healthcare*, 517 F.3d at 447 (discussing an example of the distinction between breach of contract and conversion), and no such claim is included in the complaint. The plaintiffs have not presented evidence that they had a possessory interest in renting their units at any particular price such that it may give rise to a claim of conversion.

And while the plaintiffs undoubtedly had a possessory interest in their individual units, they do not articulate any interference with that interest that might constitute conversion. Rental of the plaintiffs' units was an interference with the plaintiffs' possessory interest, but such interference was explicitly authorized (and expected) under the rental management agreement.

In sum, while the plaintiffs have articulated conduct that they characterize as unjust and unfair, they have failed to present evidence that places that alleged conduct within the bounds of a conversion claim. Accordingly, the court must grant the defendants' motion for summary judgment as to the plaintiffs' conversion claims. (ECF No. 1, ¶¶ 124-73.)

### 5. Breach of Fiduciary Duty

In Counts 12 and 13 of the complaint the plaintiffs allege that the defendants breached fiduciary duties they owed to them. (ECF Nos. 1, ¶¶ 316-42; 144 at 18-19.) They assert, "Defendants assumed the responsibility to act on behalf of the condominium unit owners as the exclusive rental agent through the rental management

program." (ECF No. 144 at 18.) But only CVR agreed to act at the plaintiffs' "exclusive rental agent through the rental management program." The only specific argument that the plaintiffs offer as to Chula Vista is that CVR was "working in concert with Chula Vista ...." (ECF No. 144 at 19.) This bald assertion does not plausibly support the existence of a fiduciary relationship between the plaintiffs and Chula Vista. Thus, the only plausible breach of fiduciary claim the plaintiffs have presented is against CVR.

"The elements of a claim for breach of fiduciary duty are: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused the plaintiff's damage." *Berner Cheese Corp. v. Krug*, 2008 WI 95, ¶40, 312 Wis. 2d 251, 270, 752 N.W.2d 800, 809. CVR argues that the plaintiffs' claim fails at the first element because no fiduciary relationship existed between it and the plaintiffs. The plaintiffs argue that CVR was a fiduciary because it "stood in a 'position of authority' with regard to the condo owners' affairs" and "[t]here was also a distinct inequity, particularly with regard to knowledge of the facts involved because CVR "did not share any of the details about how the Club operated, or how rooms were rented, with the condominium unit owners." (ECF No. 144 at 19.)

While an agreement "to assume a position of authority in regard to the affairs of another," *Zastrow v. Journal Communs., Inc.*, 2006 WI 72, ¶35, 291 Wis. 2d 426, 448, 718 N.W.2d 51, 61, and "inequality [in] knowledge of facts involved" *Prod. Credit Asso. v.*

*Croft*, 143 Wis. 2d 746, 755-56, 423 N.W.2d 544, 547 (Ct. App. 1988), are factors that may support finding a fiduciary relationship, standing alone they are insufficient.

The plaintiffs omit crucial context from these statements in *Zastrow* and *Croft*. In *Zastrow*, the court was discussing the responsibilities of a trustee when it said, "A fiduciary agrees to assume a position of authority in regard to the affairs of another in which position the fiduciary may have access to confidential information or to property of the object of the fiduciary's obligation." *Zastrow*, 2006 WI 72, ¶35. And in *Croft* the court said, "Manifest in the existence of a fiduciary relationship is that there exists an inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of facts involved, or other conditions giving to one an advantage over the other." *Croft*, 143 Wis. 2d at 755-56, 423 N.W.2d at 547.

"Fiduciary obligations represent the pinnacle of duties …." *Raab v. Wendel*, No. 16-CV-1396, 2019 U.S. Dist. LEXIS 35843, at *60 (E.D. Wis. Mar. 6, 2019). It is a heightened obligation distinct from the duty of good faith inherent in every contract. *Id.* at *47. A contractual relationship does not by itself establish a fiduciary relationship. *Id.* (quoting *Jackson v. McKay-Davis Funeral Home, Inc.*, 830 F. Supp. 2d 635, 648 (E.D. Wis. 2011)). Rather, a fiduciary relationship is marked by an agent's agreement to voluntarily "place[] the interests of the principal before his own interests." *Westmas v. Creekside Tree Serv., Inc.*, 2018 WI 12, ¶30, 379 Wis. 2d 471, 490, 907 N.W.2d 68, 76. An imbalance in knowledge or skill does not, without more, create a fiduciary relationship. After all, it is

Case 2:18-cv-01890-WED   Filed 02/25/22   Page 13 of 24   Document 160

precisely because one side possesses superior knowledge or skill that parties routinely enter into all sorts of contracts.

The plaintiffs have failed to show that a fiduciary relationship existed between any plaintiff and any defendant. There is no evidence that any defendant agreed to place the interests of any plaintiff above those of itself. Rather, the plaintiffs simply contracted with CVR for CVR to manage the rental of their condominium units. This sort of contractual relationship does not establish a fiduciary relationship. *See Raab*, 2019 U.S. Dist. LEXIS 35843, at *46 (finding no fiduciary relationship between hotel owner and hotel management company). Accordingly, the defendants are entitled to summary judgment on the plaintiffs' breach of fiduciary duty claims. (ECF No. 1, ¶¶ 316-42.)

### 6. Constructive Fraud

"[A] claim for constructive fraud in Wisconsin generally requires as an element either a violation of 'a rule of public policy' or the presence of a 'confidential or fiduciary relation.'" *Mil Acquisition Venture, L.P. v. Bouraxis Props. (New Berlin Project), LLC*, 2015 WI App 52, 364 Wis. 2d 408, 866 N.W.2d 406, 2015 Wisc. App. LEXIS 396 (unpublished) (quoting *See Boots v. Boots*, 73 Wis. 2d 207, 216-17, 243 N.W.2d 225 (1976)).

The plaintiffs' constructive fraud claims (Counts 7 and 8) rest upon their assertion that a fiduciary relationship existed between them and the defendants. (ECF No. 144 at 20-21.) Because the plaintiffs have failed to present evidence that could

support a finding that a fiduciary relationship existed between them and any defendant, their constructive fraud claims likewise must fail.

### 7. **Theft by Fraud**

In Wisconsin, persons can seek civil relief for the criminal offense of theft by fraud. *Dow v. Poltzer*, 364 F. Supp. 2d 931, 940 (E.D. Wis. 2005) (citing Wis. Stat. §§ 895.80 and 943.20(1)(d)). The effect is to simply give a statutory cause of action for a claim of fraud in the inducement. *Id*.

> The elements of theft-by-fraud, Wis. Stat. § 943.20(1)(d), are: (1) the defendant made a false representation to the owner of the property; (2) the defendant knew that the representation was false; (3) the defendant made the representation with the intent to deceive and defraud the property's owner; (4) the defendant got title to the property as a result of the false representation; (5) the owner of the property was deceived by the representation; and (6) the owner of the property was thus defrauded.

*Malzewski v. Rapkin*, 2006 WI App 183, ¶21, 296 Wis. 2d 98, 113-14, 723 N.W.2d 156, 163 (citing *State v. Kurzawa*, 180 Wis. 2d 502, 525 n.15, 509 N.W.2d 712, 722 n.15 (1994); Wis. JI-Crim. 1453).

The defendants argue that the theft by fraud claims (Counts 4 and 5) fail because the "Plaintiffs have not introduced any evidence that any alleged misrepresentations occurred prior to the signing of the [rental management agreement]." (ECF No. 125-1 at 24.) The plaintiffs in response insist that the defendants "did not give Plaintiffs and the condominium unit owners any information about how the club functioned." (ECF No. 144 at 20.) The plaintiffs argue that the "Defendants simply told the condo owners that

the Club was a 'marketing program,'" which the plaintiffs contend "was false and misleading." (ECF No. 144 at 20.)

The only allegedly false representation that the plaintiffs point to is that The Club was a "marketing program." As a preliminary matter, the inherently ambiguous nature of a term such as this makes it extremely difficult for a plaintiff to sustain his burden to show that it was false. But, in any event, The Club clearly *was* a "marketing program" in that it was a publicized and coordinated effort by the defendants to increase visitors and revenue at the resort. No reasonable finder of fact could find that describing The Club as a "marketing program" was a false representation.

The only other basis that the plaintiffs present for their theft by fraud claim regarding The Club is that the defendants failed to give the plaintiffs information about how The Club functioned. Setting aside evidence that it was discussed at two annual owners' meetings (ECF No. 144-1, ¶¶ 83, 88) and in an email to all owners (ECF No. 144-1, ¶ 86), The Club was hardly a secret. The Club was heavily advertised at the resort, and the plaintiffs were able to obtain information as readily as the would-be members Chula Vista was attempting to attract. But, more importantly, the plaintiffs have failed to point to any authority suggesting that an omission, *i.e.*, a failure to disclose certain information—as opposed to an affirmative misrepresentation—may sustain a theft by fraud claim under Wisconsin law. The statute explicitly requires "a false

representation." Wis. Stat. § 943.20(1)(d). There is nothing in the text of the statute that suggests theft by fraud can be committed by an omission.

The plaintiffs also point to the "maintenance program" as "another example of Defendants' theft by fraud …." (ECF No. 144 at 20.) Under that program, the defendants allegedly overcharged the plaintiffs for products and then misled them about it. (ECF No. 144 at 20.) Although the plaintiffs assert that they were "misled" about the prices charged, they do not point to any specific alleged misrepresentation. (ECF No. 144 at 20.) It is even unclear how they believe they were misled. Conclusory assertions of having been misled, without more, are insufficient to sustain a claim of theft by fraud. Consequently, the defendants are entitled to summary judgment as to the plaintiffs' theft by fraud claims.

### 8. Misrepresentation

The plaintiffs assert claims for both negligent and intentional misrepresentation against CVR and Chula Vista (Counts 15, 16, 19 and 20). The defendants contend that any misrepresentation claim fails because "The Club functioned exactly as described." (ECF No. 125-1 at 25.) And "the Plaintiffs have not established that Chula Vista had a duty to disclose information about The Club." (ECF No. 125 at 25.) But even if any defendant had a duty to disclose more about The Club, "the undisputed evidence demonstrates that information about The Club was communicated in multiple formats throughout the years." (ECF No. 125-1 at 25-26.)

In responding to the defendants' motion, the plaintiffs refer to their misrepresentation claims a handful of times. (ECF No. 144 at 3, 4, 13, 16, 21, 22, 24.) But aside from arguing that the claims are not barred by the statute of limitations, they never substantively address the claims. They do not respond to the defendants' arguments that they are entitled to summary judgment on the merits of these claims. By failing to respond to the defendants' arguments, the plaintiffs have waived any challenge to this aspect of the defendants' motion. *See Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

Even if the court were to try to cobble together an argument from the plaintiffs' isolated references to their misrepresentation claims, it would still grant the motion. "The elements of negligent misrepresentation are: (1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant was negligent in making the representation; and (4) the plaintiff believed that the representation was true and relied on it." *Malzewski*, 2006 WI App 183, ¶20. "The elements of intentional misrepresentation are: (1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant made the representation either knowing that it was untrue, or recklessly not caring whether it was true or false; (4) the defendant made the representation with the intent to deceive the plaintiff in order to induce the

plaintiff to act on it to plaintiff's pecuniary damage; and (5) the plaintiff believed that the representation was true and relied on it." *Id.* ¶17.

Both the plaintiffs' negligent and intentional misrepresentation claims fail at the second element. As noted above with respect to the plaintiffs' theft by fraud claim, the plaintiffs have not pointed to any untrue factual representation. The only allegedly false statement the plaintiffs have identified is that The Club was a "marketing program." But The Club undoubtedly was a "marketing program," and no reasonable finder of fact could find otherwise.

With regard to the maintenance program, although the plaintiffs state that prior to 2018 the defendants performed maintenance at a markup over their cost (ECF No. 144 at 13), this statement is not supported by a proposed finding of fact. In any event, the plaintiffs have not presented evidence that the defendants ever represented that they did not profit from the maintenance program. Consequently, the defendants are entitled to summary judgment on the plaintiffs' negligent and intentional misrepresentation claims.

### 9. "Unconscionable Contract of Adhesion"

Finally, Count 30 of the plaintiffs' complaint includes a claim titled, "Unconscionable Contract of Adhesion." (ECF No. 1 at 103, ¶¶ 606-18.) The plaintiffs allege that the new rental management agreement that CVR presented to them shortly before they initiated this lawsuit was unconscionable. "If CVR Management, LLC is

allowed to implement the proposed new RMA, Plaintiffs and the class will not only suffer further and significant damage in the form of future lost net rental income and declining property values, their claims in this case will be prejudiced and they will suffer irreversible harm." (ECF No. 1, ¶ 618.)

Although the defendants clearly seek dismissal of all the plaintiffs' claims (ECF Nos. 98 at 1; 125 at 30), they never explicitly address the plaintiffs' claim for "unconscionable contract of adhesion." The terms "unconscionable" and "adhesion" are nowhere to be found in the parties' briefs.

It may be that the defendants understand this claim as solely a claim for injunctive relief, which they argue is now moot. (ECF No. 125-1 at 30.) This view is supported by the fact that the court has never heard of "unconscionable contract of adhesion" as an actionable claim, much less one for damages. And the plaintiffs use the language of injunctive relief in alleging their "unconscionable contract of adhesion" claim. (ECF No. 1, ¶ 618 (referring to irreversible harm if CVR were allowed to implement the 2018 rental management agreement).)

The defendants argue, "Plaintiffs claim for injunctive relief under the 2018 RMA is moot. As of November 2020, a new agreement has been put in place. Additionally, none of the Plaintiffs continue to own property at the Chula Vista resort and therefore lack standing to assert any claim under the 2018 or 2020 RMAs." (ECF No. 125-1 at 30.)

The plaintiffs, likewise, make no reference to an "unconscionable contract of adhesion" claim in their response. But they do argue that their request for injunctive relief is not moot. Their arguments, however, are made without respect to the 2018 rental management agreement. Their arguments are tied to their underlying claims that the defendants' implementation of The Club was unlawful.

The court finds that, as pled by the plaintiffs, the claim titled "Unconscionable Contract of Adhesion" is solely a claim for injunctive relief with respect to the adoption of the 2018 rental management agreement and is moot.

The defendants assert that none of the plaintiffs currently own a unit (ECF No. 125-1 at 2, 30) (and the defendants do not argue otherwise), but this assertion is not supported by any proposed finding of fact. Although the proposed findings of fact establish that Riche (ECF No. 144-1, ¶ 20) and Silberman (ECF No. 144-1, ¶ 25) no longer own units, the proposed findings of fact are silent with respect to Edwards.

But even if Edwards continues to own a condominium unit, any claim for injunctive relief as to the 2018 rental management agreement is nonetheless moot because it has been superseded by the 2020 rental management agreement. (ECF No. 144-1, ¶ 82.) Because the 2018 rental management agreement is no longer in effect, there is no injunctive relief that the court may order regarding it. Therefore, insofar as the claim titled "Unconscionable Contract of Adhesion" (ECF No. 1 at 103, ¶¶ 606-18)

constituted an independent claim, the defendants are entitled to summary judgment regarding it.

## 10. Conclusion

It is easy to recognize why the plaintiffs feel they were wronged. The defendants sold discounted access to their condominium units without cutting the plaintiffs in on the fees. The plaintiffs believe that, when members of The Club rented the plaintiffs' units at a discount, but for The Club those members would have rented their units at a market rate. Thus, the plaintiffs believe that it's only fair that they should get some of the membership fees that Chula Vista collected. But to obtain relief in court, a party must have standing to pursue a claim, the defendant must be plausibly liable, and the perceived wrong must be presented in terms of a cognizable claim for relief.

Joseph Sartin and Scott Willock are not proper plaintiffs in this action because they did not personally own a condominium unit at Chula Vista. Rather, they were merely members of an LLC that owned a condominium. Therefore, they must be dismissed as plaintiffs.

Mike Kaminski is not a proper defendant because the plaintiffs have failed to present evidence that any allegedly unlawful action he took was outside his capacity as an official of Chula Vista, Inc. Therefore, all claims asserted against him must be dismissed and he must be dismissed as a defendant.

The remaining plaintiffs' civil conversion claims (Counts 1 and 2) fail because they have not presented evidence that any defendant withheld from them any property in which they had a possessory interest. No fiduciary relationship existed between the plaintiffs and any defendant, and therefore the plaintiffs' breach of fiduciary duty (Counts 12 and 13) and constructive fraud (Counts 7 and 8) claims fail. And the plaintiffs' claims for theft by fraud (Counts 4 and 5) and misrepresentation (Counts 15, 16, 19 and 20) fail because the plaintiffs have not presented evidence of false representation by a defendant. Finally, the plaintiffs' claim for injunctive relief regarding the 2018 rental management agreement (Count 30) is moot because the 2018 agreement has been superseded by the 2020 rental management agreement.

Accordingly, the defendants' motion for summary judgment (ECF No. 98) will be granted.

**IT IS THEREFORE ORDERED** that the motion for summary judgment filed by CVR Management LLC, Chula Vista Inc, and Michael Kaminski (ECF No. 98) is **granted**. The plaintiffs' complaint and this action are dismissed with prejudice. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the defendants' motion to exclude plaintiffs' expert Karen Romrell (ECF No. 103) is **dismissed as moot**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion to excluded defendants' experts Richard Bero and David Sangree (ECF Nos. 109; 128; 129) is **dismissed as moot**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion to certify class (ECF No. 110) is **dismissed as moot**.

**IT IS FURTHER ORDERED** that, the court finding good cause, the motions to restrict documents to case participants (ECF Nos. 122; 127; 134; 142; 148; 155) are **granted**.

Dated at Milwaukee, Wisconsin this 25th day of February, 2022.

WILLIAM E. DUFFIN
U.S. Magistrate Judge